### JETT v. GULF PRODUCTION CO. *
### (No. 1436.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 13, 1926. Rehearing Denied Jan. 19, 1927.)

1. Deeds ⬅211(3)—Grantor having executed deed to land used for oil development held not entitled to cancellation for fraud under evidence.

In suit by 82 year old grantor to cancel deed to property used for oil development on ground of fraud, evidence *held* insufficient to make issue for jury, where plaintiff failed to prove he had title, claim of fraud being based on grantee's statement that grantor lacked title.

2. Deeds ⬅196(2)—Plaintiff suing to set aside deed for fraud has burden of proving fraud.

In suit to set aside deed on ground of fraud, burden to prove fraud is on plaintiff.

3. Deeds ⬅121—Title is not established by showing quitclaim from one whose title or prior possession are not shown.

In suit to set aside deed for fraud, grantor could not establish title by merely showing deed from another whose title and prior possession he failed to prove.

4. Taxation ⬅809(5)—Plaintiff, in suit to cancel deed, could not establish title by tax deed without showing tax sale was authorized, where issues of common source and limitation were not raised.

In suit to set aside deed for fraud, in which grantor claimed to have been misled by gran-

tee's statement that grantor did not have title, grantor's tax deed *held* inadmissible to prove title, in absence of showing authority of tax collector to make sale, where issues of common source and limitation were not raised.

5. Deeds ⬅196(2)—In order to prove fraud warranting cancellation of deed, grantor was required to show falsity of statement that he had no title, inducing conveyance.

No issue of fraud in suit to set aside deed was raised, where statement of grantee at time of procuring deed that grantor had no title was not shown to be false.

Appeal from District Court, Orange County; V. H. Stark, Judge.

Suit by R. F. Jett against the Gulf Production Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Howth, Adams & Hart, of Beaumont, for appellant.

John E. Green, Jr., of Houston, for appellee.

WALKER, J. On the consideration of $500, which was paid in cash, appellant, R. F. Jett, on the 13th day of January, 1922, executed to appellee, Gulf Production Company, a special warranty deed to 275 acres of land in Orange county, which at that time was of the probable value of $133,500. This suit was instituted by appellant against appellee, Gulf Production Company, and others to set aside that deed on allegations: (a) That appellant owned good record title to the land at the time the deed was executed; (b) that Gulf Production Company's agent, Dan Harrison, falsely represented that appellant had no title to said land; (c) that due to age and other infirmities appellant had forgotten the facts upon which his alleged good title was based; and (d) that due to his friendship and former relations with Dan Harrison, and due to his forgetfulness, he believed the representations made about his title by Dan Harrison, and was thereby induced to execute the deed for a grossly inadequate consideration. At the conclusion of the evidence, a verdict was instructed by the trial court in favor of appellee.

On the issue of title in himself, appellant offered a quitclaim deed from T. A. Falvey to himself, dated the 9th day of June, 1885, conveying a one-half interest in the James Dyson league, of which the land in controversy is a part. He made no effort to connect Falvey with the original grantee, nor did he show any possession by Falvey or any actual claim by him to the land, nor payment by him of taxes on the land. Appellant also offered in evidence a tax deed conveying him 2,264 acres of the James Dyson league, dated the 6th day of July, 1885, by J. C. Fenner, tax collector·of Orange coun-

---

ty, selling the land as the property of unknown owners for the taxes assessed against them for the year 1884. This deed recited the necessary facts to warrant the sale, but no proof was made that any of the conditions of the deed had been performed by the tax collector. On August 1, 1885, appellant conveyed to Tresimond Granger 600 acres of the Dyson league upon a consideration evidenced in part by vendor's lien notes. Though the deed did not retain a vendor's lien to secure the payment of these notes, appellant instituted suit against Tresimond Granger to foreclose his lien. Judgment was entered pro confesso on the 29th day of April, 1887, awarding appellant judgment against Granger for $225, and foreclosing the lien against 275 acres, being the land in controversy in this case. There is no explanation in the record as to why the lien was not foreclosed against all the land originally conveyed by appellant to Granger. The judgment stipulated for a stay of execution for 60 days. On April 30, 1887, appellant executed another deed to Granger, conveying him the same 275 acres as described in said judgment, with the following recitations as to consideration, etc.:

"The State of Texas, County of Orange:

"Know all men by these presents: That I, R. J. Jett, of the county of Brown and state of Texas, for and in consideration of the sum of two hundred and seventy-five dollars cash in hand paid, and two hundred and twenty-five dollars secured to be paid by a certain judgment obtained at the spring term of the district court of Orange county, Texas, in a certain cause therein, styled R. F. Jett v. Tresimond Granger, No. 707, suit to foreclose vendor's lien on land of which the land herein described is the same as set out in said judgment, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said Tresimond Granger of the county of Orange and state of Texas, all that certain tract of land described as follows, viz.: * * *

"Now the above and foregoing deed is conditioned that the said Tresimond Granger will well and truly pay off and satisfy the said judgment for two hundred and twenty-five dollars within sixty days from its rendition, together with all costs of said suit, and interest due thereon, but should he fail to pay off and satisfy same this deed to be null and void, otherwise to be binding according to its tenor and effect."

This deed was filed for record a day or so after the expiration of the 60 days allowed Granger in which to pay the consideration. While it was excluded, appellant offered evidence to show that this consideration was never paid, and that there was nothing of record in the deed records of Orange county to show payment. Neither appellant nor Granger ever went into possession of the land or paid taxes thereon or ever asserted any active claim to the land or exercised any dominion over it. Appellant forgot his claim to this tract of land, and did not know that

he had any interest therein until he was asked by appellee's agent, Dan Harrison, to execute to it a deed conveying to it the land, which request was granted, and the deed in controversy was executed. Appellant offered in evidence a written statement made by him to appellee, Gulf Production Company, which, though excluded by the court on appellee's objection, he has brought up in the record, in which he says:

"To the best of my recollection I sold to Tresimond Granger 275 acres of land for $275. This land was all in the timber on the east end of the Dyson league, and we run out his west line so it wouldn't take in the Porter Bluff—his west line ran to the bayou east of the Porter's Bluff. He agreed to pay me $275, but he never did pay me a cent; at the time of purchase, our agreement was that as soon as he could wind up his father's estate in Louisiana he was to pay me, but before that was done, we got into a dispute about the title with the Runnels heirs and he wouldn't pay me until that was settled. Meantime, I moved to Brown county, and I thought the Runnels heirs had gotten the land I sold to Granger, and I didn't bother any further about it, and I didn't know until about two months ago that the Grangers ever claimed it after settlement of the Runnels suit; didn't know but that the Runnels got the Granger part. Me and Wallace had only one agreement about the boundary, and that is the one we have spoken about above. I have recently been told by attorneys in Houston that if I had my half of the league all run out and the bayou meandered there would be an excess of about 250 acres which still belongs to me. I do not know what this excess might amount to; it may be more or less than 250 acres. I do not mean to limit the extent of my claim by this statement. All I want is what I am entitled to."

As to the circumstances leading up to the execution of the deed, appellant testified:

"Dan drove up and said, 'I want to see you; I have a paper from the Gulf Production Company and I want you to sign it,' and said he would give four or five hundred dollars, and I asked him in what way and what it was. He said it was some land they had, but it didn't amount to anything, as they already had the land; that they had bought it from the Granger heirs. He wanted me to sign it and said it didn't amount to anything if I signed it. He led me to believe that it didn't amount to nothing."

Appellant stated that:

At that time he knew that a long time ago he had made a deed to Tresimond Granger, but the details of the transaction had all passed out of his mind. "I had let him have 700 acres, and I didn't know it was but 275 acres, and we had some lawsuit about it and I got it back, and I didn't know nothing about the other. I had forgotten about that transaction with Granger. When Dan Harrison got me to sign that deed I didn't remember that I had given Granger a deed on condition that he should pay me the money in a certain time. "We didn't discuss nothing about the title, me and Dan Harrison didn't—very little about it. We just talked along about it, and he led me to

believe that the Gulf Company had the title. Dan Harrison didn't tell me nothing about the value of this land; I didn't know about it at that time. I didn't really know that I had the land or how it was, or nothing about it, I didn't know a thing about the value of the land. I am well acquainted with Dan Harrison. I had faith in him; me and him have always been good friends, and I went to him for advice, and I didn't think then he would act like he did, and I haven't seen him only once in the courthouse since."

On the issue of his age and infirmities, appellant testified:

"I will be 82 years old on the 10th of December of this year. I was born in Orange county, Texas. I have lived here off and on all my life. I would be off at times, for a month or two or three months, or four or five years, but I would come back again. As to what the condition of my health is now, well, I am crippled, and forgetful in my mind about anything. I am absent-minded, rather. I call the children wrong names, at times. I am partially paralyzed on my right side. I have been in that condition for several years. I can write a little bit without glasses. I can see my signature without glasses; yes, sir. That is my signature."

Appellant showed by his evidence that he was thoroughly familiar with the oil development in Orange county at the time he executed his deed to Gulf Production Company, and that he had knowledge of facts when he executed this deed sufficient to give him notice that the land he was conveying was worth a very large sum of money.

Appellee offered no evidence. In offering the deeds to him, appellant made no attempt to connect appellee with his chains of title, thereby raising an issue of common source. In his brief, appellant says:

"It is undisputed that the evidence does not in any manner disclose any privity of relation between the Gulf Production Company and Tresimond Granger or his heirs."

Also, the evidence shows no connection of appellee with the title to this land, other than the statement made by Dan Harrison to appellant that the Gulf Production Company wanted him to "sign some papers so they would not be bothered about it. * * * They had wrote to him (Dan Harrison) to pay me four or five hundred dollars to sign the paper to them to quiet the title," and the deed in dispute in this case.

## Opinion.

Appellant complains of the court's exclusion of certain evidence. As this is an appeal from an instructed verdict, we have given the evidence in issue in our statement of the case, so that appellant may have the full benefit of such a case as he might be able to make on another trial.

[1, 2] In order to set aside the deed from him to the Gulf Production Company, he rested under the burden of proving his allegations of fraud. While Dan Harrison made no statement to him as to the value of the land, the record discloses that he himself was advised, or should have been advised, of its reasonable value. There is nothing in the record to show or to suggest that appellant was blindly led to execute a deed to very valuable property on the nominal consideration of $500. It is our conclusion that appellant has not even offered a scintilla of evidence to show any fraudulent concealment by Dan Harrison of the value of the property in controversy. Nor does the record raise an issue that Dan Harrison took advantage of the friendship existing between him and appellant in order to secure the execution of the deed. There is only a showing that they were good friends, met in a friendly way, and without any extended discussion of the facts consummated the sale. There is no showing of any special fiduciary relation between Dan Harrison and appellant. He was able to read and write. He had been in the territory where this land was situated, and only a short while before the trial of this suit was able to manage and conduct a restaurant in close proximity to this land. It is true that he said he had forgotten the facts upon which his title was based, but the facts were recalled to his mind by Dan Harrison during the negotiations. Harrison made no effort nor said anything that hindered appellant from acquiring a knowledge of his rights, nor did he make a misstatement of the facts as to the state of appellant's title. He recalled the fact, after he had talked with Harrison, that he had sold the land to Granger, but he made no inquiry of Harrison as to the effect of his deeds to Granger, nor did Harrison make any statement to him on that issue, other than to say that the Gulf Production Company owned the title.

[3, 4] A close study of appellant's testimony—and his was the only testimony on the issue of fraud—shows that his right to cancel this deed must rest on the statement of Harrison that the Gulf Production Company owned the title and that appellant had no title. Appellant has alleged that this statement was fraudulently made. Though he has had his day in court, and every opportunity was offered him to prove that in fact he owned the title to this land, he has not done so. He could not insist that the quitclaim deed from Falvey conveyed him the title to the land, because he showed neither title in Falvey nor prior possession by Falvey. On oral argument, and in his written brief, appellant insists that he has shown title under the tax deed, but this contention is without merit. Except on an issue of common source, which appellant did not raise, or on an issue of limitation, which was not

suggested, this deed was not admissible without proof of the assessment, levy, notice of sale, and the other facts recited in the deed as authority for the tax collector to make the sale. 'Land v. Banks, 241 S. W. 299, wherein this court held, quoting the syllabus:

"Recitals in tax deed issued in 1881, at which time the law governing the effect of such deeds was 9 Gammell's Laws, p. 46, § 8, providing that the deed should vest good title in the purchaser, but not making it evidence that the notice of sale required by 3 Sayles' Early Laws (2d Ed.) p. 518. art. 4292, § 6, had been given, cannot be considered as evidence that the notice was given."

[5] Without showing title in himself, appellant has not raised an issue of fraud against appellee by the mere statement of its agent that appellant had no title. So far as this record shows, in making that statement, Dan Harrison told the literal truth, for it appears from appellant's own record that he had no title to the land at any time.

Also, it follows that appellant has not disproven the statement made by Dan Harrison that appellee owned the land. He has said in his brief that no evidence was offered showing any privity of appellee with the Granger title, which emanated from appellant. That being so, the proper construction of the judgment that appellant recovered against Granger and of his subsequent deed to Granger, reconveying him the same land upon which he had foreclosed a lien, is not an issue in this case, though both parties have briefed it thoroughly. Hence we express no opinion as to the effect of the second deed, the one dated April 30, 1887, from appellant to Granger. As appellee is not shown to hold under that deed, and as appellant has not connected himself with the title of the original grantee, it cannot affect the result one way or the other.

We have given the same consideration to the excluded evidence as against this instructed verdict as if it had been before us. So looking to this excluded evidence, we readily see an explanation of why appellant had forgotten his connection with this land. After he had sold it to Granger, he said:

"We got into a dispute about the title with the Runnels heirs, and he wouldn't pay me until that was settled. Meantime I moved to Brown county, and I thought the Runnels heirs had gotten the land I sold to Granger, and I didn't bother any further about it."

In this statement that was excluded, and in explanation of this statement, appellant did not say that in fact the Runnels heirs did not recover the land against him.

As appellant failed to make a prima facie case in support of his allegations of fraud, the trial court properly instructed a verdict in favor of appellee.

Affirmed.