## JOSEPH CURRY V. J. DAVID CURRY ET AL

No. A-4648. Decided July 21, 1954.
(270 S.W. 2d Series 208)

422

*H. L. Williford,* of Fairfield, *Justice, Justice & Rowan* and *J. Mike Rowan,* of Athens, for petitioner.

The Court of Civil Appeals erred in holding that there was any issue to raise the issue of undue influence. Millican v. Millican, 24 Texas 426; Wetz v. Schneider, 78 S.W. 394; Salinas v. Garcia, 135 S.W. 588.

*Bowlen Bond,* of Teague, for respondents.

MR. JUSTICE CALVERT delivered the opinion of the Court.

On January 21, 1950, N. S. Curry executed and delivered to Joseph Curry, defendant-petitioner herein, a general warranty deed conveying a tract of land which was the separate property of the grantor and also the grantor's interest in certain community property of the grantor and his deceased wife. The grantee was a son of the grantor who was the father of eight other children, the plaintiffs-respondents in this proceeding.

Following the death of N. S. Curry suit was instituted by the plaintiffs to cancel the deed above mentioned on allegations of mental incapacity and undue influence. No evidence of mental incapacity was offered on the trial, but an issue was submitted to the jury on undue influence and a verdict was returned finding the execution of the deed to have been produced through undue

inflence asserted upon the grantor by the defendant-grantee. The trial judge rendered and entered judgment for the defendant, notwithstanding the verdict of the jury. The Court of Civil Appeals has reversed the judgment of the trial court and rendered judgment on the jury's verdict for the plaintiffs. 265 S.W. 2d 899.

The case is here on a point of error asserting that there was no evidence of probative force to support the jury finding of undue influence and that the Court of Civil Appeals therefore erred in reversing the trial court's judgment. The evidence is considered in some detail in the opinion of the Court of Civil Appeals. It will be considered here only in general summary and in its light most favorable to plaintiffs in support of the jury's verdict.

N. S. Curry's wife died in 1926. For the greater part of a period of some 20 to 25 years the defendant, an unmarried son who was 51 years of age at the time of trial in April, 1953, lived with the grantor on a farm where the grantor carried on farming and ranching activities. On November 21, 1949, N. S. Curry, then 85 years of age, broke his leg and hip and was hospitalized at Teague, Texas, until June 9, 1950. It thus appears that the deed under attack was executed while the grantor was in the hospital, some two years before his death on November 30, 1951.

The plaintiffs rely on a number of circumstances and inferences arising therefrom as supporting the jury's verdict. The circumstances are enumerated by the plaintiffs as follows: (1) The grantor was old and frail and therefore susceptible of being easily influenced; (2) The defendant attended to the grantor's business while the grantor was confined in the hospital; (3) The defendant had the deed prepared, gave all the instructions for the preparation thereof, and paid the attorney therefor; (4) The notary who took the grantor's acknowledgment to the deed and the witnesses who attested its execution were called to do so by the defendant; (5) The grantor had nothing to do with the preparation of the deed and did not know it had been prepared until it was presented to him; (6) The deed was taken by the defendant after its execution and was filed with the clerk for recordation on the following day; (7) The defendant was trying to get the grantor to sign an instrument affecting his property rights; (8) The deed was an unnatural disposition of the grantor's property; (9) The acts and conduct of the grantor

after the execution of the deed revealed that he was not conscious of having executed it; (10) The defendant told his father that the other boys were stealing his cattle; (11) The statements of the defendant worried the grantor and prejudiced him against the plaintiffs; (12) In fact, defendant was selling the grantor's cattle.

For reasons which will be apparent, we will consider the first nine of these circumstances together, separate and apart from the last three.

All of the direct testimony bearing on the grantor's mental condition and the strength of his mind and will was offered by the defendant and was to the effect that the grantor possessed sufficient mental capacity to make a valid deed on January 21, 1950, and that at such time he was a man of strong will; there was no testimony to the contrary. There was no testimony whatever that the grantor was weak and frail, either physically or mentally, unless it may be said that an inference of frailty and weakness might be drawn from the grantor's age and crippled condition and any such inference of mental weakness or weakness of will is contrary to all of the testimony of all of the witnesses, both lay and medical. We are unwilling to hold that proof that the grantor was 85 years of age and had a broken hip, without further proof that the years and his injury had had a debilitating effect, gave rise to a reasonable inference, contrary to all the direct testimony, that he was easily influenced, which inference, in turn, could be appropriated by the jury as evidence of probative force that his will was subverted and his deed was procured by undue influence. The only evidence to which plaintiffs allude as indicating mental frailty is that which shows that during a period of two or three weeks while the grantor was in the hospital he was delirious, irrational, and confused as a result of a high fever from an attack of pneumonia or influenza. The grantor's physician, Dr. Cox, definitely fixed this period at a date subsequent to the date of the deed and the evidence mentioned can have no weight on the issue.

There is no evidence that the defendant attended to the grantor's business for him either before or while he was in the hospital, except that the defendant paid the hospital bill. If the jury could have inferred that the defendant attended to the grantor's business while he was in the hospital because some one had to do so, there is no evidence that the defendant dominated the grantor's decisions with respect thereto or that he acted

free of instructions, and in the absence of such evidence we are unwilling to hold that it would be a reasonable inference that he controlled the conduct of the grantor's business affairs. As a matter of fact, testimony offered by the plaintiffs themselves, through the witness Miss Sallie Carroll, tends to negative such an inference. She testified that she heard the defendant ask the grantor to sign some papers and heard the grantor say: "Hell no, I don't want to sign them, I would like to read them first."

There is evidence that the defendant employed and paid an attorney, in a city some 60 miles from Teague, to prepare the deed, giving the attorney all directions as to what should be included therein, and that the defendant arranged for the notary public to take the acknowledgment to the deed and for the witnesses to attest its signing. There is no direct testimony that the grantor had nothing to do with the preparation of the deed and did not know it had been prepared until it was presented to him, but there is testimony from which the jury might reasonably have drawn such an inference. There is evidence that the deed was delivered to the defendant who had it recorder on the following day. There is evidence that the defendant had been trying to get the grantor to sign some papers which the jury might reasonably have inferred was the deed in question. The deed did make an unnatural disposition of the grantor's property in the sense that it preferred the defendant over the grantor's other eight children. There is testimony from which the jury might reasonably have inferred that after leaving the hospital the grantor did not realize he had executed the deed or, more reasonably, that he did not realize the effect of the deed. The testimony last referred to consists of an offer by the grantor to the witness, Ira Felix, who had known the grantor all of her life and had worked for him in prior years, to give her three acres of land, together with a house thereon that he and his wife had built for her if the witness would come and stay with him and work for him; a statement by the grantor, after he had returned home from the hospital, made to the witness, E. B. Hamm, that he had rather give him his property than to have "any of his kids to get it," and the statement of the grantor, made after leaving the hospital, to the witness, R. H. Bradley, who sought a pipeline easement, that "if the rest of them has got to be in this, just forget it; just go around me. Me and Joe will sign it, if you can't get it that way, just go around me."

The existence of the foregoing circumstances and inferences does not necessarily mean, however, that they were of such probative force as to support the jury finding of undue influence.

It is the uncontradicted testimony of three disinterested witnesses, Clydell MacSpadden, the notary public who took the acknowledgment to the deed, and Drs. Maurice Gage and Jack R. Cox, who witnessed its execution, that the deed was explained by Mr. MacSpadden to the grantor—as expressed by MacSpadden "that he was deeding it all to Joe Curry"—before it was executed and the testimony of Mr. MacSpadden that the grantor said "that was right." It is also the uncontradicted testimony of the three witnesses that the defendant, although perhaps in the hospital, was not in the room while the deed was being executed, and it was the testimony of Mr. MacSpadden that the deed was given to him by the grantor and by him returned to the grantor.

In the light of the foregoing analysis of the testimony, our question is this: Is evidence that the defendant had an opportunity to exercise undue influence on a grantor of sound mind and strong will, coupled with the facts that he alone selected, advised and paid the attorney for preparation of the deed which conveyed all of the grantor's property to him to the exclusion of the grantor's other children, obtained the services of the notary and witnesses in its execution after having been heard asking the grantor to sign some papers, and took the deed and recorded it after its execution, with the grantor thereafter indicating that he did not fully comprehend the effect of the deed, of such probative force as to support the legal conclusion that the influence of the defendant on the grantor "controlled his volition and induced him to do that which he otherwise would not have done?"

In Long v. Long, 133 Texas 96, 125 S.W. 2d 1034, this court recognized that "It is impossible to lay down any hard and fast rule, or rules, which will accurately govern the question as to whether a given record contains affirmative probative evidence of undue influence." In the same case the court recognized that proof of undue influence by direct testimony is rarely possible; that such proof usually must be, and is, rested in circumstantial evidence. The court also recognized, however, that a person of sound mind has a perfect legal right to dispose of his property as he wishes, with the burden on one attacking the disposition to prove that it was the product of undue influence—that the grantor's free agency was destroyed and his will overcome by excessive importunity, imposition, or fraud, so that the instrument does not, in fact, express his wishes but the wishes of the person exercising the influence. Besteiro v. Besteiro, Texas Com. App., 65 S.W. 2d 759, 761.

We attach no weight to the possible inference that the defendant was trying to get the grantor to execute the deed. As

heretofore indicated this possible inference grows out of testimony that the defendant was trying to get the grantor to sign some papers. Miss Sallie Carroll testified that she saw the defendant come to the hospital and go into the grantor's room with some papers in his pocket and then heard the defendant say that he wanted the grantor to "sign some papers for him" to which the grantor replied: "Hell no, I don't want to sign them, I would like to read them first." The witness fixed the time of this incident as the day before the occasion when Mr. MacSpadden and Drs. Gage and Cox visited the grantor. Jake Simons testified that he visited the grantor at the hospital on two occasions during the early winter and that on the second of such visits the grantor told him that "Joe had some papers for him to sign, he didn't have any papers to sign that he knowed anything about." Elmer Utsey testified that during a visit with the grantor in the latter part of February or in March, 1950, the grantor told him "there had been some parties there with some papers to sign, he told them he had no papers to sign, and he was not going to sign any." The testimony of Miss Carroll and Mr. Simons may have given rise to an inference that the defendant wanted the grantor to execute the deed but there is absolutely no intimation in the testimony of either witness of any force, intimidation, duress, excessive importunity, fraud, or other undue influence used or practiced by the defendant to overcome or subvert the will of the grantor and induce the execution of the deed against his wish. It has been held that one may request or even importune and entreat another to execute a favorable dispositive instrument, but unless the importunities and entreaties are shown to be so excessive as to subvert the will of the maker they will not taint the validity of the instrument with undue influence. Robinson v. Stuart, 73 Texas 267, 11 S.W. 275, 276; Salinas v. Garcia, Texas Civ. App., 135 S.W. 588, 591, writ refused; Thompson on Wills, 3rd Edition, § 143, p. 226; Page on Wills, Lifetime Edition, Vol. 1, § 185, p. 371; 57 Am. Jur., Wills, § 361, p. 264. Obviously, the statement of the grantor to the witness Utsey could have no relevancy since it was made a month or more after the deed was executed.

■ We attach no weight to the fact that the defendant came into immediate possession of the deed and had it recorded. Unlike a will, the law contemplates that a deed will be delivered to the one who takes under it; it is not effective unless delivered. The prompt recording of the deed rebuts rather than supports an inference that its execution was clouded with suspicion.

■ We attach no weight to the fact that the defendant secured the services of the notary and the attesting witnesses. The no-

ary was cashier of the local bank and the witnesses were doctors. There is no showing that they had any interest in the manner in which the grantor would dispose of his property and all of them testified that the defendant was not in the room when the deed was explained and executed. The mere act of arranging for a notary and witnesses does not give rise to a reasonable inference of undue influence.

■ We attach no weight to the circumstances heretofore detailed from which it was said an inference might possibly be drawn that the grantor did not fully understand the effect of his deed. It is not surprising, considered from either a practical or legal standpoint, that the grantor still considered that he had an interest in the property after the execution of the deed. A part of the consideration for the deed was the undertaking of the defendant to care for the grantor for the remander of his life. The record indicates quite clearly that the grantor was not a man of learning or legal training. He no doubt felt that the conditions enumerated as a part of the consideration left him with an interest in the property, as indeed a failure of the defendant to perform might well have given rise to a right of cancellation of the deed and a revesting of title in the grantor. In any event, the failure of grantor to fully appreciate the effect of the deed in question to the extent that he still felt that he had an interest in the land conveyed thereby, he being a man of sound mind and strong will, could hardly give rise to a reasonable inference that it was a product of undue influence.

The deed made an unnatural disposition of the property only in the sense that one child was preferred over the others. This circumstance is frequently present in cases involving the issue of undue influence, but those in which it appears to have been given weight by the courts involved the absence of a reasonable basis for the preference and the presence of other strong probative circumstances. For cases involving the problem generally, see Besteiro v. Besteiro, Texas Com. App., 65 S.W. 2d 759; Kincheloe v. Kincheloe, Texas Civ. App., 152 S.W. 2d 851, writ refused, W.O.M.; Long v. Long, 133 Texas 96, 125 S.W. 2d 1034; Craycroft v. Crawford, Texas Com. App., 285 S.W. 275; Salinas v. Garcia, Texas Civ. App., 135 S.W. 588, writ refused; Russell v. Boyles, Texas Civ. App., 29 S.W. 2d 891, writ dismissed; Truelove v. Truelove, Texas Civ. App., 266 S.W. 2d 491, writ refused, N.R.E.

■ In this case the deed recited a consideration of long care and service, and, in addition, an agreement by the defendant to

take care of the grantor for the remainder of his life and pay his funeral expenses. The record reflects that the defendant performed the services and paid all of the grantor's funeral and hospital expenses. Considering that the defendant remained with the grantor for the greater part of 20 to 25 years, caring for him and ministering to his wants while the other children rarely came about him, was in constant attendance on his needs while he was in the hospital with many of the other children visiting him not at all during that period and those who did visit him only once or twice, and that he obligated himself to care for the grantor for the remainder of his life and to pay his funeral expenses and for a tombstone at his grave, we do not regard the deed as making such an unnatural disposition of the property as to give rise to a reasonable inference that it was procured by undue influence.

■ We are left, then, with this question: Will the sole fact that the defendant selected, advised and paid the attorney who prepared the deed support the legal conclusion that the deed was a product of undue influence? We hold that it will not.

In Long v. Long, 133 Texas 96, 125 S.W. 2d 1034, 1037, it was said that the fact that the chief beneficiary in the will there under attack selected, instructed and paid the attorney who prepared the will, could "be considered with tremendous force against him, and against the will." That statement must be related, however, to the other facts and circumstances surrounding the execution of the will. Facts and circumstances existing in that case, and non-existent in this, which made the foregoing statement particularly applicable there and inapplicable here, are: (1) The extreme fragile condition of the testatrix whose mental vigor at the very time she executed the will "was greatly weakened and impaired by age, sickness and grief"; (2) that the beneficiary "generally looked after and supervised most of the business affairs and business interests of his mother, the testatrix, and that Mrs. Long had few business dealings or ventures without consultation with" the beneficiary, and (3) that the testatrix signed the will "without any material comment."

Other than Long v. Long, supra, the principal authority on which plaintiffs rely is Craycroft v. Crawford, Texas Com. App., 285 S.W. 275, 282. In that case Colonel Crawford, by holographic will, left his entire estate to a second wife, thereby disinheriting his children by his first marriage and his child by his second wife. The opinion of the court reflects so many facts and cir-

cumstances present in that case that are not present here that it would unduly lengthen this opinion to list them. It is worth noting that the court, after analyzing the many circumstances, concluded its opinion by saying: "We do not hold that any one of them, or less than all of them, is sufficient for that purpose" (to raise a jury issue).

We now notice the last three circumstances relied on by plaintiffs as raising the issue.

■ The defendant was heard to tell the grantor, while he was in the hospital, that certain of his other sons were stealing his cattle and that "if he didn't sign the papers they were going to steal him blind." The grantor inquired of a friend if he knew anything about some of the boys stealing his cattle, and the defendant told a witness that the boys were stealing the cattle and he, the defendant, was therefore selling them. The defendant was seen loading cattle on a truck.

Respecting this testimony the substance of plaintiffs' contention is that the defendant was stealing the cattle but was falsely accusing other sons of the grantor of stealing them. This contention appears to raise the issue that the execution of the deed was induced by fraud.

Many authorities consider fraud in the inducement of a dispositive instrument as a distinct ground for invalidating it, wholly separate and apart from undue influence. Page on Wills, Lifetime Edition, Vol. 1, § 176, p. 347, et seq; Thompson on Wills, 3rd Ed., § 139, p. 218, et seq.; 57 Am. Jur., Wills, § 370, p. 269; 28 A.L.R. 787. However, the courts of this state have treated the two as one, it being said that "undue influence is itself a species of legal fraud," Bradshaw v. Seaton, Texas Civ. App., 128 S.W. 943, 944, writ refused; and that "undue influence may be exercised through threats or fraud or the silent power of a strong mind over a weak one." Smith v. Mann, Texas Civ. App., 296 S.W. 613, 615, writ refused. See also Gallagher v. Neilon, Texas Civ. App., 121 S.W. 564, writ refused; Bonilla v. Lujan, Texas Civ. App., 168 S.W. 2d 691, 693, writ refused, W.O.M.

The trial court's charge recognized the right of plaintiffs to set aside the deed if it was procured or induced by fraud. "Undue influence" was defined as " any fraudulent or designing means employed upon and with the maker of an instrument by which, under the circumstances and conditions by which such maker was

surrounded, he could not well resist and which controlled his volition and induced him to do that which he otherwise would not have done." Even though fraud is treated as a species of undue influence, the evidence will not support a legal conclusion of undue influence based thereon unless it will support a legal conclusion of fraud.

■ There is no direct testimony in the record establishing fraud and none from which an inference of fraud can arise. For representations to form a basis of fraud, they must be false. See authorities, supra; Janes v. Stratton, Texas Civ. App., 203 S.W. 386, 388, no writ history; Jett v. Gulf Prod. Co., Texas Civ. App., 290 S.W. 884, writ dismissed. The record is devoid of any proof of the falsity of defendant's statements to the grantor that the other boys were stealing his cattle. We cannot presume they were false. It must be remembered that the burden was on the plaintiffs to prove they were false and not on the defendant to prove they were true. Spurr v. Spurr, 285 Mo. 163, 226 S.W. 35, 39-40. The same thing may be said with reference to the testimony that the defendant was selling the cattle. Plaintiffs' theory is that defendant was stealing the cattle and falsely charging plaintiffs with the theft. But that is a theory only. There is testimony that defendant was selling some of the cattle, but there is absolutely no evidence that he was not authorized to sell them or that he was stealing them. If plaintiffs expected to prevail on the theory mentioned, it was incumbent on them to offer evidence to support it. In the absence of such evidence there was no support for the jury finding of undue influence based on fraud in the inducement of the deed.

On oral argument counsel for plaintiffs was asked if the testimony with respect to the stealing of the cattle did not actually pose a question of fraud rather than the usual question of undue influence and he suggested that false statements made by one natral beneficiary against the others would be evidence of undue influence even though they did not constitute fraud. The suggestion has support in good authority. See Atkinson on Wills, p. 212, where it is said: "Likewise creation of resentment toward a natural object of testator's bounty by false statements, though not amounting to fraud, may invalidate the will." But this rule presupposes that the statements are false. In Page on Wills, supra, Vol. 1, § 187, p. 377, it is said: "Derogatory or malicious statements made to testator concerning the natural objects of his bounty do not, of themselves, amount to undue influence, especially if such statements are true." The influence of truthful

statements could hardly be said to be *undue*. Here, again, we are faced with a record which throws no light on the truth or falsity of the defendant's statements to the grantor that the other boys were stealing his cattle, and the plaintiffs must be held to have failed to meet their burden of proving that the statements were false and were therefore evidence of undue influence.

■ We conclude that there is no evidence of probative force to support the jury verdict. In Burgess v. Sylvester, 143 Texas 25, 182 S.W. 2d 358, 359, this court said: "A solemn will executed under the formalities required by law by one mentally capable of executing it should not be set aside upon a bare suspicion of wrongdoing on the part of a beneficiary." The same rule applies in a suit to cancel a deed. Besteiro v. Besteiro, supra. In our opinion the verdict of the jury in this case is supported by no more than suspicion.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion delivered July 21, 1954.