Casey I. WITHERS, Appellant,

v.

H. E. SPROUL, Appellee.

No. 5723.

Court of Civil Appeals of Texas,
El Paso.

July 21, 1965.

Rehearing Denied Sept. 15, 1965.

Croom, Barnes & Adams, Houston, for appellant.

Scott, Hulse, Marshall & Feuille, Schuyler B. Marshall, El Paso, Norman C. Davis, Marfa, for appellee.

CLAYTON, Justice.

This is a will contest. The testator, Robert C. Withers, died on or about June 15, 1961. One H. E. Sproul, no relative but a friend of the testator, filed for probate in the County Court of Jeff Davis County a will of the deceased dated August 14, 1959, in which Sproul was named Independent Executor, which will was contested by Casey I. Withers, a son of the deceased and his sole heir at law, alleging mental incapacity of the deceased and undue influence exerted upon the deceased by Sproul. This will was admitted to probate, and an appeal taken by contestant to the district court of said county. In a trial before a jury, the parties stipulated that there was no issue raised by the evidence as to the proper execution of the will or the testamentary capacity of Robert C. Withers at the time the will was executed. In answer to special issues, the jury answered "We do not" to Special Issue No. One, inquiring whether the jury found that the decedent had revoked the will of August 14, 1959 by the execution of another will with the intention of revoking the August 14, 1959 will; and answered "We do not" to Special Issue No. Two, inquiring whether the jury found that the August 14, 1959 will was procured by undue influence on the part of the proponent Sproul. To a judgment on this verdict, admitting the

will of August 14, 1959 to probate and appointing proponent Sproul as Independent Executor, contestant Withers appeals.

Appellant presents five points of error: No. 1, that the finding and answer of the jury to Special Issue No. 1 is contrary to the great weight and preponderance of the evidence and the manifest weight of the testimony; No. 2, that therefore the trial court erred in admitting to probate the will of August 14, 1959; No. 3, that in admitting said will to probate the trial court erred as a matter of law since the evidence introduced by contestant raised a sharp issue as to the revocation of said will and the proponent failed to obtain an affirmative finding by the jury as required by law that the will had not been revoked; No. 4, that the admission of the will to probate was error as a matter of law since the requirements of part (3) of subdivision (b), section 88 of the Texas Probate Code had not been given compliance because the proponent of the will had not met his burden of proof by a preponderance of the evidence and failed to obtain a jury finding thereon that said will had not been revoked; and No. 5, that the jury's response to Special Issue No. 2 is contrary to the great weight and preponderance of the evidence and the manifest weight of the testimony. Appellee raises the objection to appellant's Points 3 and 4 that they were not assigned as error in appellant's Amended Motion for New Trial and they therefore cannot be considered on appeal. We do not pass on the merits of this objection for the reason that we consider the objected-to points are properly disposed of in our discussion of Points 1 and 2, dealing with the matter of revocation.

§ 88, Texas Probate Code, subsection (b), part (3) provides: "(b) Additional Proof for Probate of Will. To obtain probate of a will, the applicant must also prove to the satisfaction of the court: * * * (3) That such will was not revoked by the testator." The Texas Supreme Court discusses this statutory provision in the 1964 case of Ashley v. Usher, 384 S.W.2d 696,

in the following language: "Thus, the burden of establishing that a will has not been revoked is placed by this statute on the proponent of the will sought to be probated." (Citing numerous cases). "The rule enumerated in the above cases is that where testator's will produced in court comes from the custody of those to whom it has been delivered by the testator, or is found among testator's papers in a place he usually keeps his valuable papers, and there is no suspicion cast upon the genuineness of the will, there exists a presumption that the will has not been revoked. Under such circumstances, a proponent has satisfied the statutory requirement to prove no revocation." See also Covington v. McDonald, 307 S.W.2d 335 (Tex.Civ.App., 1957; n. w. h.). The above is precisely the situation presented here. When the August 14, 1959 will was drawn, an original and two signed copies were executed. The original was kept by the testator, one signed copy went to the attorney who drew it up, and a second signed copy went to Sproul, the main beneficiary and proponent here. One of these signed copies was filed for probate and later replaced by the original will, which was found by the proponent in a box on the bed or a desk in decedent's bedroom. This original will was introduced in evidence and was in an unmarked and unmutilated condition. One of the attesting witnesses testified by deposition that the will was executed under all the necessary formalities to make it a valid will (and this was stipulated by the parties to this cause), and had not been revoked in so far as the witnesses knew. This was held to be sufficient to satisfy the burden of proving that the will had not been revoked, in the Covington v. McDonald case cited above. That case also quoted section 63, Texas Probate Code, as to the manner in which wills in writing may be revoked:

"'No will in writing, and no clause thereof or devise therein, shall be revoked, except by a subsequent will, codicil, or declaration in writing, executed with like formalities, or by the

testator destroying or canceling the same, or causing it to be done in his presence. Acts 1955, 54th Leg., p. 88, ch. 55.' "

and cites Baptist Foundation of Texas v. Buchanan, 291 S.W.2d 464, 472 (Tex.Civ. App., 1956; ref., n. r. e.) as authority for the statement that:

" 'The burden is upon the party who asserts revocation "to show by a preponderance of the testimony the execution, attended by due formality and legal requirements, of a subsequent instrument, which either expressly or impliedly revoked the former will." 44 Tex.Jur., Wills, Sec. 101, p. 645.' "

No will, codicil or declaration in writing subsequent to the August 14, 1959 will was produced in the instant case, but it is of interest to note that a previous will, dated April 29, 1946, was canceled by the decedent writing across the face of the instrument, and signing, the following declaration: "I have this the 17. day of Sept., 1958, cancelled this, the above Will, and am making another Will for all Purposes. (Signed) Robert C. Withers."

In the interest of brevity we will not attempt to recount the evidence relied upon by appellant-contestant in support of his points of error relative to revocation of the will which was admitted to probate. As we read the record this evidence amounted to little more than conjecture or speculation, while the jury's answer of "We do not", in response to Special Issue No. One inquiring whether the jury found that the August 14, 1959 will was revoked by the decedent by the execution of another will with the intention of revoking the August 14th will, is amply supported by the evidence. The contention is advanced by contestant that such answer by the jury did not amount to an affirmative finding for the proponent that the will had not been revoked. It is stated by proponent that this issue, in the form in which submitted, was requested by contestant, but in any event no objection was made by contestant to the

issue as submitted, and we feel that as a matter of law, under the Texas Probate Code and the authorities above referred to, no adequate revocation has been shown here. We accordingly overrule Points of Error Nos. 1, 2, 3 and 4.

This brings us to Point of Error No. 5 which charges that the jury's answer to Special Issue No. 2 was contrary to the great weight and preponderance of the evidence. This issue inquired whether the jury found that the will of August 14, 1959 was procured by undue influence on the part of the proponent, Sproul, to which the jury answered: "We do not." The focal point of the controversy is the second provision of said will, reading as follows:

"*SECOND.* On March 28, 1946 I deposited the sum of $14,000.00 at the University State Bank of Houston, Texas to the joint account of Casey I and Robert C. Withers. Thereafter the said Casey I Withers withdrew the sum of $8,000.00 from said account.

(a) I hereby give and bequeath to my son, Casey I Withers and his wife Lessie, $1,000.00 of the said $8,000.00 above referred to.

(b) I hereby give and bequeath to my grandson, Norman C. Withers and his wife Martha, $1,000.00 of the said $8,000.00 above referred to.

(c) I give and bequeath unto my great grandson, Blake Withers the sum of $1,000.00 of the said $8,000.00 above referred to.

(d) The foregoing bequests of $1,000.-00 each are payable out of and from the said $8,000.00, and shall not be paid from any other property constituting my estate."

With the exception of three other bequests of $200.00 each to nephews, the rest of the estate, of some considerable proportions, was left to the proponent Sproul, who was also named Independent Executor. It is charged by contestant that the dispositive provisions of the will are unnatural in that they effectively disinherit the decedent's

son, Casey I. Withers, contestant here, and his wife, as well as Norman C. Withers, a grandson, and Blake Withers, a greatgrandson, of whom the decedent was very fond, while giving the great bulk of the estate to Sproul, to whom decedent was not related. It is pertinent to note here that the will of April 29, 1946, which was canceled or revoked by decedent's own writing on September 17, 1958 (as referred to earlier in this opinion) had left all decedent's property to his son Casey and said will was canceled because decedent was "making another Will for all Purposes", which he did by the will of August 14, 1959. Another point of interest relates to the circumstances surrounding the deposit of the $14,000.00 in the Houston bank on March 28, 1946, alluded to in the second provision of the August 14th will. There appears to be some conflict as to whether or not Casey I. Withers had repaid the $8,000.00 said to have been withdrawn from this account. But in any event, at the same time that the $14,-000.00 deposit was made in the Houston bank, decedent conveyed to Casey I. Withers a tract of land in Jasper County, Texas and three tracts of land in Jeff Davis County, Texas. These conveyances were accompanied by two substantially identical letters written by decedent to his son, Casey, one relative to the Jasper County and the other relating to the Jeff Davis property. One of these letters reads as follows:

"March 29, 1946

"Mr. C. I. Withers
Beaumont, Texas

Dear Son:

By deed dated March 29, 1946, I conveyed to you 3 tracts of property situated in Jeff Davis County, Texas, fully described in said deed. In deeding this property to you, it is agreed that should I desire, during my lifetime, to have you sell any of said three tracts, or all of said three tracts, you will do so at my request and give me the proceeds of said sale of said properties, or any part thereof.

Upon my death, any of said property remaining in your name will become your absolute property.

Very truly yours,
/s/ Robert C. Withers

APPROVED:
/s/ C. I. Withers"

Subsequently, in 1957, the decedent demanded return of the Jasper County property from Casey but the latter refused to comply, resulting in a lawsuit filed against Casey by his father in Jasper County in the fall of 1958. This suit was settled in the latter part of 1959, but the decedent then demanded return of the Jeff Davis property. This resulted in much correspondence and threats of another lawsuit before the matter was finally settled. During these controversies, Lessie Withers, wife of Casey I. Withers, wrote the decedent a letter dated July 1, 1959, about six weeks before the execution of the August 14, 1959 will, and from which letter the following excerpts are taken:

"I hope that you and every one that is connected with that suit in Jasper County are satisfied * * * Years ago different *one's* of your family tried to tell me the kind of person that you were, and that you did not care for no one but your self; but I just would not believe it. You will never know what a hard time I had of *convincening* Casey that he was wrong by not forgiving and forgetting the past so Nor-

man could grow up knowing you as a real GrandFather * * * Now here when we could have all been so happy together you let some one talk you into *loosing* your family, the thing that means more to me than all the money and land that you have or *every* will have * * * I don't know what your friends or relatives have told you or are trying to get you to do but I do know one thing, as for me I have washed my hands of the whole thing * * * Now this is the Thanks that Casey & I both get from you. Back again to what I was told years ago, self and selfishness is your *motto*. I hope when this is over and you realize that what you get out of it could never take the place of a family and loved ones, that you can still be happy and enjoy spending the money that you get."

We believe that it can fairly be stated that the controversies which the decedent had with his son, the contestant here, the expressed attitude of his son's wife toward decedent, and from the record as a whole, that the affection which decedent no doubt held for his family was adversely affected. On the other hand there is testimony in the record that decedent was strong-willed and headstrong, not easily influenced by others and, in sum, not the type of person who would be readily susceptible to undue influence. The Texas Supreme Court, in Boyer v. Pool, 154 Tex. 586, 280 S.W.2d 564, 565 has stated:

" * * * The test of undue influence is whether such control was exercised over the mind of the testator as to overcome his free agency and free will and to substitute the will of another so as to cause the testator to do what he would not otherwise have done but for such control. Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138; Curry v. Curry [153 Tex. 421], 270 S.W.2d 208."

The will of August 14, 1959, admitted to probate, was discussed by decedent with his attorney, perhaps, as claimed by contestant, in the presence of the proponent Sproul; the will later was dictated by the attorney to his secretary who typed it; a copy of the proposed will was sent to the decedent by covering letter dated August 12, 1959, typed by the attorney's secretary, in which the attorney asked to be informed of any changes or corrections desired; and on August 14, 1959 the will was signed in the attorney's office by the decedent in the presence of the two subscribing witnesses, the attorney and his secretary, who acted as notary public. No changes were made in the will and no one else was present when it was executed in its original form and two copies. The original went to decedent, a copy to the attorney and another copy to Sproul.

We find nothing in the testimony of any of these witnesses to the execution of the will, nor indeed in the entire and extensive record, which included the testimony of decedent's doctor and pastor, which would have led us to a conclusion that undue influence, such as defined in Boyer v. Pool, supra, had deprived the decedent of a free and voluntary exercise of his own discretion and desire in the framing of this will. Nor do we find the will to be so unnatural as to cast upon it grave doubts as to its legitimate and voluntary character, except perhaps, the sole fact that the principal beneficiary named therein is a friend of some long standing rather than one or more of decedent's direct of kin. We believe that the circumstances, such as we have related from the evidence, satisfactorily account for the disposition made, and the jury apparently so found. We are impelled, therefore, to reject the contention of "undue influence" and to overrule the last point of error, No. 5.

The judgment of the trial court is accordingly affirmed.