**Alfred Melrose BELL et ux., Appellants,**

**v.**

**Samuel KINS et al., Appellees.**

**No. 14667.**

Court of Civil Appeals of Texas.

San Antonio.

April 24, 1968.

Rehearing Denied May 22, 1968.

J. Mack Ausburn, San Antonio, for appellants.

L. DeWitt Hale, Corpus Christi, William B. Moser, Jr., Beeville, for appellees.

BARROW, Chief Justice.

Appellee Samuel Kins brought this suit for specific performance of a written sales contract for approximately 150 acres of land in Wilson County, Texas, entered into on August 8, 1964, with Sarah Alice Witten, and to set aside a gift deed of land, including these premises, from Mrs. Witten to her son and daughter-in-law, appellants, Alfred Melrose Bell and wife, Beatrice Graham Bell, executed on December 30, 1964. Mrs. Witten died on January 19, 1965, and her grandson, appellee Howard E. Bell, administrator of her estate, was joined as party defendant. The administrator admitted the validity of the contract and filed a cross-action seeking to cancel the deed from Mrs. Witten to appellants for

undue influence. Judgment was rendered on a jury verdict setting aside the gift deed for undue influence and granting specific performance to appellee Kins under the earnest money contract.

Appellants have perfected this appeal wherein they assert five points of error: That (1) the earnest money contract violated the Statute of Frauds, Art. 3995, Vernon's Ann.Civ.St., and is therefore unenforceable; (2) and (3) there is no evidence or insufficient evidence, as a matter of law, that Kins timely tendered performance of the earnest money contract; (4) and (5) there is no evidence or insufficient evidence, as a matter of law, to raise an issue of undue influence upon Mrs. Witten by Mrs. Beatrice Bell in the execution of the deed of December 30, 1964. Each of these points is predicated upon the action of the trial court in failing to grant an instructed verdict and therefore only "no evidence" points are raised by appellants. Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965).

On August 8, 1964, Mrs. Witten, as seller, and appellee Kins, as buyer, entered into an earnest money contract whereby Mrs. Witten agreed to sell approximately 150 acres of described land for a stated consideration of $93.50 an acre, payable $2,000 cash and the balance in twelve annual payments. Two thousand dollars was deposited with the Wilson County Abstract Company in accordance with said contract and Clark Murray, Esq., was employed to check the title and prepare the closing papers. It is admitted by appellee Kins that he actually agreed to pay $96.00 per acre for the land. He testified that his father, who had a financial interest in the deal, had placed a price limit of $93.50 on the land and therefore Kins paid Mrs. Witten in cash a bonus of $2.50 an acre at the time the contract was signed. The contract, as sought to be enforced and as ordered by the trial court, provides for $93.50 an acre and there is nothing in the record to justify consideration of the other $2.50 per acre as anything other than a bonus for execution of the contract.

■ Appellants concede that the written contract of sale meets the requisites of the Statute of Frauds. It is urged, however, that there was an oral modification which renders the same unenforceable. It is settled that oral changes or modifications of a written contract required to be in writing by the Statute of Frauds make the contract unenforceable. Dracopoulas v. Rachal, 411 S.W.2d 719 (Tex.Sup.1967); Michael v. Busby, 139 Tex. 278, 162 S.W.2d 662 (1942); Robertson v. Melton, 131 Tex. 325, 115 S.W.2d 624, 118 A.L.R. 1505 (1938); Zeluff v. Ekman, 386 S.W.2d 838 (Tex.Civ. App.—Houston 1965, no writ).

■ Appellants' brief is not clear as to the basis of their complaint of an oral modification of the written contract. About November 19, 1964, Mrs. Witten and Kins made a verbal agreement whereby he agreed to purchase an additional 50 acres owned by her for $100.00 per acre. This deal was never reduced to writing, was not sued upon by Kins, and formed no part of the judgment. There is no evidence that the original contract was modified or changed in any manner by this subsequent oral agreement affecting different land. This second contract did not affect the validity of the first contract, in that the oral contract was not related to and did not change the first contract.

■ The written contract of sale is not brought within the Statute of Frauds by the payment of the bonus of $2.50 per acre at the time of execution of the original contract. In Garcia v. Karam, 154 Tex. 240, 276 S.W.2d 255 (1955), the Supreme Court reviewed the Texas law relative to oral consideration for a contract for sale of real estate. The Court said: "It is well settled in Texas that the Statute of Frauds does not require that the consideration in a contract for the sale of realty be expressed in writing. Simpson v. Green, Tex.Com.App., 231 S.W. 375; Adkins v. Watson, 12 Tex. 199. Texas has not adopted the section of the Statute of Frauds relating to the transfer of personalty, neither has this state en-

acted a statute which prohibits a subsequent oral modification of a contract which is required by the Statute of Frauds to be in writing." Here the bonus was fully paid and there is no contention that there was an oral agreement which varied the written contract of sale upon which this suit was brought or on which the judgment directed specific performance. The trial court did not err in refusing to grant appellants an instructed verdict on the asserted ground that the contract of August 8, 1964, was unenforceable by reason of the Statute of Frauds.

Appellants' second and third points relating to whether there is evidence to support an issue of timely tender of performance by Kins is briefed with the first point, however there is no argument or authority relating to these points. We therefore doubt that these points are properly presented for review. Rule 418(c), Texas Rules of Civil Procedure; Appellate Procedure in Texas § 12.4(6); Lowe v. Valdez, 380 S.W.2d 200 (Tex.Civ.App.—Amarillo 1964, no writ); Garcia v. Lacey, 316 S.W.2d 183 (Tex.Civ.App.—San Antonio 1958, no writ). In any event, the testimony of attorney Murray, who prepared the closing papers as soon as the title was cleared, as well as that of the brother of Mrs. Witten, and appellee Samuel Kins supports a fact finding that Kins timely tendered full performance of the contract of sale on December 4, 1964.

The deed from Mrs. Witten to appellants was executed on December 30, 1964, subsequent to timely tender of performance by appellee Kins under the contract of sale. It is undisputed that at the time the deed to appellants was executed Mrs. Witten and appellants were aware of the contract of sale. In fact, Attorney Murray refused to prepare a deed when requested on December 30, and advised Mrs. Witten, in the presence of appellant Mrs. Bell, that she was not in a position to convey the land to appellants. Under this uncontradicted record, the appellants do not claim to be innocent holders and took said deed subject to the rights of appellee Kins under the contract of sale. The trial court did not err in entering a judgment ordering specific performance.

In view of the judgment on administrator's cross-action, setting aside the deed to appellants, it is necessary to discuss appellants' contention that there is no evidence to support the jury finding that Mrs. Witten was acting under the undue influence of Mrs. Beatrice Bell when she executed the deed to the 200 acres on December 30, 1964. Appellants do not claim that there was any consideration for this deed. Nor do they challenge in any way the jury finding that said deed was executed with the intent to delay or hinder appellee Kins in his effort to close the sale contemplated by the written contract. Our question is whether there is evidence of probative force to raise a fact issue that undue influence was exerted by appellant Mrs. Bell on Mrs. Witten in the execution of the deed.

This is a difficult question for appellate review in that our courts have recognized that it is impossible to lay down any hard and fast rule, or rules, which will accurately govern such a determination and that legal precedents are of little value other than for the announcement of certain general rules of law to be applied to the facts of each case. These general rules have been enunciated by our Supreme Court in several cases. See Long v. Long, 133 Tex. 96, 125 S.W.2d 1034 (1939); Curry v. Curry, 153 Tex. 421, 270 S.W.2d 208 (1954); Rothermel v. Duncan, 369 S.W.2d 917 (Tex.Sup. 1963); Pearce v. Cross, 414 S.W.2d 457 (Tex.Sup.1966). These cases all recognize that proof of undue influence by direct testimony is rarely possible and such proof usually must be and is rested in circumstantial evidence. In Rothermel v. Duncan, supra, it was held that before a testament may be set aside on the ground of undue influence, the contestant must prove: (1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution

of the testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence. Among other facts which may shed light upon this question, courts usually look to evidence of infirmity of mind produced by age, ill health or other reasons, circumstances attending the execution of the instrument, opportunity for the exercise of influence that would destroy the exercise of free agency and unnatural or unjust disposition of the property in question.

Appellants urge that the facts in this case are the same as those presented in Curry v. Curry, supra, wherein the Supreme Court held that the jury finding of undue influence was supported by no more than suspicion and there was no evidence of probative force supporting same. It is true that many of the facts in *Curry* are present here as they were in Pearce v. Cross, supra, wherein the Supreme Court held that the jury was reasonably authorized to infer and conclude that testatrix's free will and volition were subverted and destroyed by inordinate persuasions on the part of defendant, and testatrix was thus induced to execute a will which she would not have otherwise executed. Under the rules applicable to review of this type case, little would be gained by a detailed comparison of the facts in this case with those in other cases. Rather, we must look at the facts in this case.

Mrs. Witten was 82 years of age and declining rapidly both in mind and body at the time the deed was executed. In fact, she had been in and out of the hospital for several weeks prior thereto and died about three weeks thereafter. Attorney Murray testified that her mind was bad. In November, 1964, appellant Mrs. Bell started living in Mrs. Witten's home located on the land in question. The record is replete with testimony that shortly thereafter there was a definite change in the mental attitude of Mrs. Witten concerning this land. Theretofore she had been most anxious to close this deal and had talked to Attorney Murray in trying to expedite the preparation of the papers. She was very close to her brother,

J. B. Hunt, who lived in San Antonio, and for many years he visited her about every other week-end. She had leaned on him for much advice during that time, including arrangements for the contract of sale. After Mrs. Bell moved in, Mr. Hunt was led to believe that Mrs. Bell had taken over and his visits were not needed. He was not consulted in regard to this deed. Even an elderly neighbor and friend of many years experienced difficulty in visiting Mrs. Witten after Mrs. Bell moved in Mrs. Witten's home. Mrs. Bell was given authority by Mrs. Witten to sign checks on the latter's account, including use for personal expenditures.

There was testimony from several witnesses that Mrs. Witten had freely entered into the contract of sale and had planned on moving to Corpus Christi after the sale to live in a house to be provided by the surviving widow of one of her sons who had died several years previously. She was very close to this former daughter-in-law, but, without explanation, broke off all contact with her after Mrs. Bell moved into the home.

The deed was unnatural in several respects. Under the law of descent and distribution, appellant Bell would receive a third of Mrs. Witten's estate. Also it is seen that Mrs. Witten did not preserve a life estate in this home place. Apparently she would become only a guest in her home of many years.

There is direct testimony that on at least two occasions in the period after Mrs. Bell moved in with Mrs. Witten, Mrs. Bell stated that she was going to break up the deal with Kins. Mrs. Bell was with Mrs. Witten when Attorney Murray refused to prepare a deed to appellants and she took the lead in this discussion. After Murray refused, Mrs. Bell secured the services of an attorney in a nearby city who had previously done some work for her family. Mrs. Bell accompanied Mrs. Witten to this lawyer's office that same day. It is significant that this attorney did not testify at the trial, nor was his absence in any way explained.

It is our opinion that there are sufficient facts in this record to constitute evidence of probative force to raise a fact issue as to the exercise of undue influence over Mrs. Witten by appellant Beatrice Graham Bell in the execution of the deed to appellants, and therefore the trial court did not err in overruling appellants' motion for an instructed verdict.

The judgment is affirmed.