**Charley GREEN, Appellant,**

v.

**Judith Lisa White EARNEST, Individually and as Independent Executrix of the Estate of Cecil Ray Earnest, Tim Earnest, and Eugene Earnest, Appellees.**

No. 08–91–00394–CV.

Court of Appeals of Texas,
El Paso.

Oct. 7, 1992.

Rehearing Overruled Nov. 12, 1992.

---

Randal Patterson, Hollmann, Lyon, Patterson & Durell, Inc., Odessa, for appellant.

Jimmy Edwards, Odessa, for appellees.

Before KOEHLER, BARAJAS and LARSEN, JJ.

## OPINION

KOEHLER, Justice.

In a will contest case involving a claim of undue influence, the trial court granted the proponent's motion for summary judgment from which judgment the contestant brings this appeal. In a single point of error, the contestant asserts that the trial court erred in granting the summary judgment. We affirm.

## FACTUAL BACKGROUND

The decedent, Cecil Ray Earnest (Cecil or testator), died testate on September 16, 1989, found by a jury in another civil suit[1] to have resulted from a gunshot wound inflicted by the will proponent in this case, Judith Lisa White Earnest (Judith or proponent). Cecil was survived by his two sons, Tim and Eugene, who, though named as parties, have chosen to take a neutral position in the contest. Cecil and Judith had lived together since 1986 with some evidence that after November 1988, they held themselves out as husband and wife which may have resulted in a common law marriage. The contestant, Charley Green (Charley or contestant) had been an employee of Cecil in the latter's businesses from 1979 or 1980 until April 1989 when Cecil let him go because Cecil had "shut down the business" at that time.

During the period of 1986 to the time of his death, Cecil had executed three wills, each of which in turn revoked all prior wills. The first of the wills was dated May 19, 1986 and bequeathed Cecil's entire estate in equal shares to Judith and the two sons, naming Judith as independent executrix of the estate and as trustee of the minor sons' interests. The second will, executed on December 1, 1988, made Charley

---

1. In a suit styled *Tim Earnest & Eugene Earnest v. Judith Lisa White Earnest,* cause number 90–04–05590–CCCV, in the 220th District Court of Comanche County, Texas, the jury, in answer to questions, found that Judith White caused the death of Cecil Earnest by shooting him with a handgun, but found zero damages in response to the questions inquiring as to what sums of money would reasonably compensate the two sons for their damages resulting from the death of their father. The trial court on August 23, 1991 rendered judgment in accordance with the jury findings that Tim and Eugene take nothing from Judith as a result of the suit.

an equal one-fourth beneficiary, along with Judith and the two sons, of the residuary estate, again appointed Judith as independent executrix, appointed Charley to run Cecil's two businesses and named Judith and Charley as co-trustees of two sons' estate. The third will, the one which was admitted to probate and is the subject of this appeal, was executed on August 11, 1989. It followed the same testamentary disposition as the May 19, 1986 will, thus eliminating Charley as a beneficiary, as a co-trustee and as manager of the businesses.

The August 11, 1989 will was admitted to probate on December 11, 1989. Charley filed suit on May 21, 1991 to contest the probate of that will, alleging as sole ground therefor that the August 11, 1989 will was the result of an undue influence exerted by Judith on Cecil. Judith moved for summary judgment. Charley filed a response. Following a hearing, the court granted her motion, finding that no material fact issues existed, and rendered judgment that Charley take nothing.

## STANDARD OF REVIEW

In reviewing a summary judgment appeal, this Court must determine whether the successful movant in the trial court carried its burden of showing that there is no genuine issue of a material fact issue and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether or not there is a disputed fact issue precluding summary judgment, evidence favorable to the non-movant is to be taken as true, and in that connection, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Nixon*, 690 S.W.2d at 548–49. If the defendant is the movant and he submits summary judgment evidence disproving at least one element of the plaintiff's case, then summary judgment should be granted. *Bradley v. Quality Service Tank Lines*, 659 S.W.2d 33, 34 (Tex.1983); *Rayos v. Chrysler Credit Corporation*, 683 S.W.2d 546, 547 (Tex.App.—El Paso 1985, no writ).

## UNDUE INFLUENCE

Charley's case in the trial court depends entirely upon his being able to establish ultimately that the will admitted into probate was the result of undue influence. Therefore, in order for Judith to prevail on her motion for summary judgment, it was necessary for her to submit appropriate evidence disproving at least one element of Charley's allegations of undue influence. Undue influence implies the existence of testamentary capacity in the testator that was subjected to and controlled by a dominant power or influence. *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex.1963). Before a will may be set aside on the ground of undue influence, the contestant must prove:

● the existence and exertion of an influence;

● the effective use of that influence to subvert or overpower the mind of the testator at the time the will was executed; and

● the execution of a will which the testator would not have executed but for such influence.

*Id.* at 922.

Undue influence may be shown by direct or by circumstantial evidence, but will usually be established by the latter. *Rothermel*, 369 S.W.2d at 922; *In re Olsson's Estate*, 344 S.W.2d 171, 173 (Tex.Civ. App.—El Paso 1961, writ ref'd n.r.e.). When circumstantial evidence is relied upon, the circumstances must be so strong and convincing and of such probative force as to lead a well-guarded mind to a reasonable conclusion not only that undue influence was exercised but that it controlled the will power of the testator at the precise time the will was executed. *Kirkpatrick v. Raggio*, 319 S.W.2d 362, 366 (Tex.Civ. App.—Fort Worth 1958, writ ref'd n.r.e.). Those circumstances which are as consistent with a will executed free from improper influence as they are with a will resulting from undue influence cannot be considered as evidence of undue influence. *Rothermel*, 369 S.W.2d at 922; *Smallwood v.*

*Jones,* 794 S.W.2d 114, 118 (Tex.App.—San Antonio 1990, no writ). It is not enough that the beneficiary had the opportunity to exert influence; the evidence, direct or circumstantial, must show not only the presence of opportunity but that improper influence was exerted at the time the will was made. *Smallwood,* 794 S.W.2d at 119.

Evidence of all relevant matters occurring within a reasonable time before and after the execution of the will may be considered. *Lowery v. Saunders,* 666 S.W.2d 226, 234 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). Illustrative of circumstances which are material and should be considered as probative evidence of undue influence are: the surroundings and circumstances attending the execution of the instrument, including the relationship between the maker of the instrument and the beneficiary and any others who might be expected to be recipients of his bounty; the motive, character and conduct of the persons benefitted by the instrument; the participation by the beneficiary in the preparation or the execution of the instrument; the words and acts of the parties; the interest in and the opportunity for the exertion of undue influence; the physical and mental condition of the maker of the instrument at the time of its execution, including his age, any weakness or infirmity, and the extent to which he was dependent upon and subject to the control of the beneficiary; and the improvidence of the transaction by reason of unjust, unreasonable or unnatural disposition of the property. *Lowery,* 666 S.W.2d at 234; *In re Olsson's Estate,* 344 S.W.2d at 174; *see also, Rothermel,* 369 S.W.2d at 923.

In support of her motion for summary judgment, Judith offered Charley's deposition testimony to prove that there were no material fact issues raised by Charley's petition.[2] In his deposition, Charley testified that he had talked on the telephone with Cecil on August 4 or 5, 1989, and was told by Cecil at that time that Cecil was going to change his December 1, 1988 will by taking Charley out of it for the reason that although Cecil had treated Charley like a son, "he didn't like it because, you know, I was going in business for myself." During the same telephone conversation, Cecil questioned Charley about some missing equipment from Cecil's business, but did not accuse Charley of taking it.

In Charley's response to the motion, he attached his affidavit and additional excerpts of his deposition testimony. In his affidavit, he stated that Judith had the opportunity to influence and "used her influence over Cecil to get him to drop me from Cecil's will," that she told Cecil that Charley was stealing from him to get him to drop Charley from his will, that she told "people that Cecil was going to kill me.... [which] was calculated to frame me for the murder of Cecil Earnest which JUDITH committed on September 16, 1989. She shot Cecil so she could get his money." He also stated that Judith had told him before it happened that Cecil was going to change his will and that she had listened in on the telephone conversation in early August 1989 to make sure she had been successful in influencing Cecil.

In his deposition, Charley admitted that the only evidence he had that Judith had exerted undue influence on Cecil to get him to make the August 11, 1989 will was based on his opinions and beliefs. The following is typical of his responses when pressed for evidence of undue influence:

Q. Now, in Paragraph VIII [of the petition] you said that the execution of this August 11th will was executed as a result of undue influence.

I know that we covered that earlier on, but I want to go back to that so we can track this petition paragraph by paragraph.

Tell me, once again, everything that you can think of that you consider as undue influence. Give me all of your

2. In Charley's first amended petition to set aside the August 11, 1989 will, he alleged that evidence of undue influence by Judith was shown by the Comanche County jury verdict and judgment that Judith had caused the death of Cecil Earnest by shooting him with a handgun. See footnote 1.

facts, all of your witnesses, all of your documents that you intend to show that there was quote undue influence?

A. Like I say, I believe that she used her body and her charm, her wit.

Q. What evidence and witnesses do you have to prove that or to tend to prove that, or is that, once again, just your opinion?

A. It's my opinion.

Q. Do you have any witnesses that will testify to that?

A. That they believe that she influenced him?

Q. No, that they have evidence of it? Not opinions or something like that. I want to know some good old hard evidence that we all look for in these cases.

A. Well, I believe some of the evidence would be the wills, that she wanted me out of the will. That is about it.

Q. Okay. Nothing else?

A. Not that I can recall.

Q. You have no other witnesses or evidence on the issue of undue influence then, correct?

A. Not right now I don't.

Q. Okay. Now then, how did she exert this undue influence over Cecil Earnest?

A. By leading him on and making him believe that she really loved him and all that, whenever he really loved her. She just used that to her advantage.

Q. Is that it?

A. Yeah.

Q. Now, Charley, that next sentence, there is five words in there. It says, 'Influence existed and was exerted.'

What evidence and witnesses do you have that undue influence existed and that it was exerted?

. . . . .

A. That is my opinion.

Q. Okay. You don't have any evidence or witnesses; that is just your opinion?

A. Yeah.

 Whether a beneficiary under a will exerted undue influence on a testator is a question of ultimate fact for the fact finder. Under Tex.R.Civ.Evid. 701 and 704, a lay witness may be permitted to express an opinion if it is rationally based on the perception of the witness and would be helpful to a clear understanding of his testimony or the determination of a fact in issue, including an ultimate fact. *Chase Commercial Corporation v. Datapoint Corporation,* 774 S.W.2d 359, 368 (Tex. App.—Dallas 1989, no writ). In this case, Charley's opinions are neither rationally based on his perceptions nor are they particularly helpful to a clear understanding of his testimony or the determination of the undue influence issue. An issue of undue influence is not raised unless the record contains some evidence of probative force. *Kirkpatrick,* 319 S.W.2d at 366. Charley's opinions and beliefs on the subject of undue influence are not evidence of probative force. All of the circumstances recited by Charley in support of his opinions are as consistent with a will executed free from improper influence as they are with a will made as a result of undue influence. Although Judith may have had an opportunity to influence Cecil in the making of the will, there is no evidence that she did influence him improperly or otherwise. The circumstances raise at most a mere surmise or suspicion that the third will was the result of an improper influence, but are not by themselves sufficient to produce a reasonable belief that an undue influence was exerted. *Rothermel,* 369 S.W.2d at 922–23. Moreover, the fact that the third will returned to the same dispository scheme as the first will easily allays that suspicion. Even the fact that Judith caused Cecil's death by shooting him with a gun a little more than a month after the third will was executed is not logically or rationally circumstantial evidence of undue influence at the time of the will's execution. The point of error is overruled.

Judgment is affirmed.