**In the ESTATE OF Hazel H. BUTTS.**

**No. 09–02–074–CV.**

Court of Appeals of Texas, Beaumont.

Submitted on Jan. 9, 2003.
Decided March 27, 2003.

Terry Wood, Crutchfield, DeCordova & Chauveaux, Randy Drewett, Randy Drewett Law Firm, Beaumont, for appellants.

Walter D. Snider, Snider & Morgan, LLP, Beaumont, for appellee.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

DAVID B. GAULTNEY, Justice.

This is an appeal from the granting of a summary judgment in a will contest. The issue is whether the will of Hazel H. Butts was the result of undue influence.

### THE ELEMENTS OF UNDUE INFLUENCE

To invalidate a will on the ground of undue influence, a contestant must establish: 1) the existence and exertion of an influence; 2) the effective operation of the influence so as to subvert or overpower the mind of the testator; and 3) the execution of a testament which the maker thereof would not have executed but for the influence. *See Rothermel v. Duncan,* 369 S.W.2d 917, 922 (Tex.1963). Essentially, undue influence is a form of fraud; the term describes the wrongful use of influence, such as through force, intimidation, duress, or deception, to cause the execution of a will which is contrary to the testator's desire for the distribution of her property after death. *Id.* Not every influence is undue influence; courts look to whether the free agency of the testator is destroyed and a testament produced that expresses the will of the one exerting the influence. *Id.*

The burden of proving undue influence is upon the party contesting the will's execution. *See Rothermel,* 369 S.W.2d at 922. The contestant must introduce some tangible and satisfactory proof of the existence of each of the elements of undue influence. *Id.* If circumstantial evidence is used to establish undue influence, circumstances that are as consistent with a will executed free from improper influence as they are with a will resulting from undue influence cannot be considered as evidence of undue influence. *See Green v. Earnest,* 840 S.W.2d 119, 121 (Tex.App.-El Paso 1992, writ denied). Evidence of an opportunity to exert influence is not enough. The evidence, direct or circumstantial, "must show not only the presence of opportunity but that improper influence was exerted at the time the will was made." *Id.* at 122. A will "executed under the formalities required by law by one mentally capable of executing it should not be set aside upon a bare suspicion of wrongdoing." *Garza v. Garza,* 390 S.W.2d 45, 46–47 (Tex.Civ.App.-San Antonio 1965, writ ref'd n.r.e.).

### THE SUMMARY JUDGMENT

Appellants ("contestants") are Michael K. Stephenson and Jeffrey L. Orr, as next friend of Ashley D. Orr and Jonathan M. Orr, minors. They contest the Butts will (the "December will"). They claimed that Butts lacked testamentary capacity[1] and that the will was procured by the undue influence of Catherine Pointon (the named independent executor under the December

---

1. The allegations of Butts' lack of testamentary capacity have been abandoned by contestants.

will), Evelyn Lee (a named beneficiary), and Deborah Sample, (a friend and advisor of Butts). Stephenson sought admission to probate of an earlier will executed by Butts (the "October will"), in which Stephenson was named independent executor and beneficiary and the two minors received specific bequests.

The proponents of the December will filed a motion for summary judgment alleging there is no evidence of undue influence. *See* Tex R. Civ. P. 166a(i). The motion, though designated as a no-evidence motion, referred to summary judgment evidence. In response, contestants argued there was sufficient evidence to create a fact issue that Evelyn Lee, a beneficiary, and Deborah Sample, a friend and advisor to Butts, had exercised undue influence. The court granted the motion for summary judgment.

Rule 166a(i) requires the trial court to grant a no-evidence motion for summary judgment unless the respondents—in this case the contestants of the December will—produce summary judgment evidence raising a genuine issue of material fact. Tex.R. Civ. P. 166a(i). *See Brown v. Big D Transp., Inc.,* 45 S.W.3d 703, 705 (Tex. App.-Eastland 2001, no pet.). No evidence of wrongdoing constituting undue influence was presented; as a matter of law movant was entitled to judgment.

### BACKGROUND

Contestants are relatives of Ruth Irons, a friend of Butts. Irons and Butts traveled every year to Maine, where they lived during the summer months. Irons was diagnosed in 1995 with terminal cancer. Irons and Butts orally agreed that the first to die would leave the other her estate, and the survivor would leave the remainder of her estate to both their relatives. Contestants do not argue this agreement was enforceable, but they do cite the agreement as a basis for concluding the December will was a result of undue influence.

Irons died in 1996 in Maine, and Butts came into possession of Irons' estate. Butts was diagnosed in 1997 with terminal cancer. Attorney Scott Mann of Beaumont prepared a will for her, which she executed on October 30, 1997 (the "October will"). Butts' October will designated Stephenson, Irons' great-nephew, as the primary beneficiary, named him as independent executor, and provided, among other things, specific monetary bequests to Ashley and Jonathan Orr, also relatives of Irons. Believing she was near death, Butts expressed a desire to go to Maine for her final days, because that is where Irons passed away. At the time of Butts' departure for Maine, there were no apparent problems between Butts and Stephenson. This situation changed during Butts' stay in Maine. On December 17, 1997, Butts executed a new will that omitted contestants from the will. Contestants claimed undue influence by three individuals: Catherine Pointon, Evelyn Lee, and Deborah Sample.

### CATHERINE POINTON

Catherine Pointon, a relative of Butts, was named as second successor executor in the October 1997 will. Pointon had no significant contacts with Butts during Butts' final days in Maine. Although contestants named Pointon in their pleadings, contestants' response to the motion for summary judgment does not point to any evidence of any exercise of undue influence by Catherine Pointon, nor does the response even mention her. In depositions, contestants admitted they have no evidence as to Pointon. The court properly granted summary judgment on contestants' pleadings concerning Pointon.

### EVELYN LEE

■ Butts contacted Evelyn Lee about staying with Butts during her last days. Lee took care of Butts during that time. Lee became aware that Butts was critical of Stephenson because he was harassing her on the phone about different things. Butts expressed her desire to remove Stephenson from the will. Lee made arrangements for the execution of the December 1997 will. Lee says she first became aware of her own status as a beneficiary under the proposed new will when she, along with others, faxed information regarding the proposed will to attorney Scott Mann.

While Lee may have had the opportunity to exercise influence, the record contains no evidence of acts undertaken to fraudulently or unduly influence Butts. Mere opportunity to influence is not sufficient to establish undue influence. *Rothermel*, 369 S.W.2d at 923. While it was shown that Lee arranged for a notary and witnesses for the execution of the December will, the making of these arrangements is not proof of undue influence. *See Curry v. Curry*, 153 Tex. 421, 424–26, 270 S.W.2d 208, 210–12 (Tex.1954). Witnesses who had been present at the execution of the December will in Maine testified that Butts was in possession of her faculties and understood what she was doing at the time. Persons who had observed or talked to Butts around the time of the execution of the December will testified she understood her actions and could not be influenced to do something she did not want to do. Scott Mann, the attorney who prepared both the October and December wills, testified that Butts articulated to him her reasons for wanting to change the will. He spoke with her several times, and he had no concerns about her having sufficient capacity to make the will. The court properly granted summary judgment as to

contestants' claims of undue influence by Lee.

### DEBORAH SAMPLE

■ Contestants first amended petition alleges there was an exercise of undue influence by Catherine Pointon and Evelyn Lee and those "acting in concert with them." Sample is not mentioned by name. In contestants' response to the motion for summary judgment, allegations of undue influence by Deborah Sample first appear; and in their brief to this court contestants contend that Deborah Sample exercised undue influence over Butts. In neither the response filed in the trial court nor in their brief to this court is there any argument or allegation that Sample was acting "in concert" with Lee or Pointon.

Even if we interpret contestants' pleadings broadly to include Sample, there is no evidence she benefitted from the December will. *See Green*, 840 S.W.2d at 122 (beneficiary status and motive as factors). Sample did write Butts a letter which was critical of Stephenson's interference in Butts' affairs, but by itself the letter does not constitute undue influence; Sample's letter is consistent with Sample's relationship as a friend and advisor to Butts, and is equally consistent with a will executed free from improper influence. *See Rothermel*, 369 S.W.2d at 922 (circumstances relied on as establishing undue influence "must not be equally consistent with the absence of the exercise of such influence."). The court properly granted summary judgment on any claims of undue influence based on Sample's conduct.

The judgment of the trial court is affirmed.

AFFIRMED.

DON BURGESS, Justice, dissenting.

I respectfully dissent. The majority treats this as a "no evidence" summary

judgment, as styled by the movants, even though the movants referenced and attached lengthy evidence in support of the motion.[1]

When determining whether undue influence exists in a particular case, the following factors are considered:

(1) the nature and type of the relationship existing between the testator, the contestants and the party accused of exerting such influence;

(2) the opportunities existing for the exertion of the type of influence or deception possessed or employed;

(3) the circumstances surrounding the drafting and execution of the testament;

(4) the existence of a fraudulent motive;

(5) whether there has been an habitual subjection of the testator to the control of another;

(6) the state of the testator's mind at the time of the execution of the testament;

(7) the testator's mental or physical incapacity to resist or the susceptibility of the testator's mind to the type and extent of the influence exerted;

(8) words and acts of the testator;

(9) weakness of mind and body of the testator, whether produced by infirmities of age or by disease or otherwise;

(10) whether the testament executed is unnatural in its terms of disposition of property.

*In re Estate of Graham*, 69 S.W.3d 598, 609-10 (Tex. App.—Corpus Christi 2001, no pet.).

The majority, in the "Background" segment, alludes to the relationship between Ruth Irons and Hazel Butts and refers to an agreement between the ladies as to the dispositions of their respective estates, but this "Background" leaves out several relevant facts.[2] They had lived together for many years and were lifelong friends. Their permanent residence was in Beaumont, but for many years had spent their summers in Maine. Neither had children but had an agreement that their combined estates would provide a "catastrophic fund" for the survivor. Upon the survivor's death, the remaining estate would be divided among their respective families.

---

**1.** It can be argued, from a policy standpoint, that such motions should be treated as a traditional summary judgment, as these "hybrid" motions tend to confuse where the burden is placed. The standard of review for a traditional summary judgment is well established. *See* Tex. R. Civ. P. 166a(c); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex. 1990). To prevail on summary judgment under rule 166a(c), a movant must establish that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam). In reviewing a no-evidence summary judgment under rule 166a(i), a court applies the same legal sufficiency standard as in reviewing directed verdicts. *See Stephan v. Baylor Med. Ctr. at Garland*, 20 S.W.3d 880, 891 (Tex. App.—Dallas 2000, no pet.). The court reviews the evidence in the light most favorable to the nonmovant and disregards all contrary evidence and inferences. *Id.* If the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact, a no-evidence summary judgment is improper. *Id.* When analyzing both traditional and no-evidence summary judgments, a court considers the evidence in the light most favorable to the nonmovant. *See General Mills Restaurants, Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 833 (Tex. App.—Dallas 2000, no pet.).

**2.** Many of these facts may be opinions but, under Tex. R. Evid. 701 and 704, a lay witness may be permitted to express an opinion if it is rationally based on the perception of the witness and would be helpful to a clear understanding of his testimony or the determination of a fact in issue, including an ultimate fact. *See Chase Commercial Corp. v. Datapoint Corp.*, 774 S.W.2d 359, 368 (Tex. App.—Dallas 1989, no writ).

As part of their estates, Ruth and Hazel owned an annuity through Sun America. After Ruth learned of her terminal illness, in keeping with their agreement, Ruth transferred her interest in the annuity to Hazel. As previously noted, Ruth died in 1996 in Maine and left her entire estate to Hazel. After Ruth's death, Hazel exchanged the Sun America annuity for an annuity with American Enterprise and designated Ruth's family as beneficiaries of that annuity. Hazel was diagnosed with terminal cancer in August of 1997 and decided to return to Maine to live out her remaining days. In October, 1997, Hazel changed the beneficiaries of the annuity to her family and friends and executed a will leaving her estate to Ruth's family, thus fulfilling both ladies' original intent. Hazel went from Beaumont to Maine with Evelyn Lee and in less than three weeks decided to execute a new will excluding Ruth's family as beneficiaries and designating Ms. Lee, among others, as beneficiaries.

While Hazel was still in Beaumont, she was satisfied with the disposition of her estate and had nothing negative to say about Michael Stephenson. It was only after her move to Maine that she became irritated with Michael and changed her will. During this time, Hazel's disease was progressing and she openly spoke of increasing weakness. Ms. Lee provided for her care and made the arrangements for the changing of Hazel's will.

The contestant may prove these elements by circumstantial as well as direct evidence. Our Supreme Court stated in *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963):

> The exertion of influence that was or became undue is usually a subtle thing and by its very nature usually involves an extended course of dealings and circumstances. Thus, it is settled that the elements establishing undue influence may be proved by what is known as circumstantial, as well as by direct, evidence. In the absence of direct evidence all of the circumstances shown or established by the evidence should be considered; and even though none of the circumstances standing alone would be sufficient to show the elements of undue influence, if when considered together they produce a reasonable belief that an influence was exerted that subverted or overpowered the mind of the [person] and resulted in the execution of the [document] in controversy, the evidence is sufficient to sustain such conclusion.

Id. (citation omitted). It is an ultimate question for the fact finder as to whether a beneficiary under a will exerted undue influence on a testator. *See Green v. Earnest*, 840 S.W.2d 119, 123 (Tex. App.—El Paso 1992, writ denied).

> The jurors are in the best position to sift through the direct and circumstantial evidence presented concerning this subtle concept. The jury is vitally important in the determination of whether undue influence was exerted to the degree required and with the result alleged when probative evidence is introduced which tends to show undue influence.

*Cobb v. Justice*, 954 S.W.2d 162, 166 (Tex. App.—Waco 1997, pet. denied).

The contestants, in this case, have met their burden of showing there is more than a scintilla of evidence on each of the elements of undue influence to the point that a jury should decide the question. I would reverse the summary judgment and remand for a trial on the merits.