In The



Court of Appeals



Ninth District of Texas at Beaumont



 ______________________ 


 

NO. 09-06-201 CV


 ______________________


 

GREG LEWIS, Appellant



V.



SUSAN LAMB, Appellee






On Appeal from the 411th District Court


San Jacinto County, Texas


Trial Cause No. 10580






MEMORANDUM OPINION 


 This appeal is from a summary judgment in a will contest. On December 28, 1993,
Lillian Loyd executed a will leaving all her estate to Susan Stanfield (later Lamb). Ms. Loyd
died on August 1, 2002. The county court admitted her will to probate. Greg Lewis filed a
will contest. Lamb filed a no-evidence motion for summary judgment, which the trial court
granted. Lewis raises five issues on appeal. 

 Under Rule 166a(i), a party may file a no-evidence motion for summary judgment if,
after adequate time for discovery, "there is no evidence of one or more essential elements of
a claim or defense" on which the non-movant has the burden of proof at trial. Tex. R. Civ.
P. 166a(i). A no-evidence summary judgment is essentially a motion for a pretrial-directed
verdict. Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 581 (Tex. 2006). Once the movant
states the elements she is challenging, the burden shifts to the non-movant to present enough
evidence to raise a material fact issue on the challenged elements. Id. at 582. 

 In this will contest, Lewis pled that Loyd lacked testamentary capacity and
testamentary intent, and that the will was the product of Lamb's undue influence on Ms.
Loyd. Because Lewis filed the will contest after the trial court admitted the will to probate,
he had the burden of proof on those issues. See In re Estate of Flores, 76 S.W.3d 624, 629
(Tex. App.--Corpus Christi 2002, no pet.). In response to Lamb's no-evidence motion
challenging each element of Lewis's causes of action, Lewis had the burden to raise more
than a scintilla of evidence on each element. See King Ranch, Inc. v. Chapman, 118 S.W.3d
742, 751 (Tex. 2003). 

 In issues one and three, Lewis contends the evidence raises fact issues on lack of
testamentary capacity, lack of testamentary intent, and undue influence. Lewis's affidavit
states Ms. Loyd struck her head in a 1991 fall; she was hospitalized and resided in care
facilities until her death in August 2002. He explains he observed Loyd "from the 1980's"
when he performed services for her and her companion, E.C. Harry, for a number of years
prior to Harry's death and Loyd's fall. Lewis indicates he checked on them on a daily basis. 
He asserts Ms. Loyd was close to only two or three people: E.C. Harry, Nicolasa Galvan, and
himself. Lewis also states that although Loyd requested him (Lewis) to be her guardian and
gave her attorney, Robert Atkins, instructions to that effect, Atkins had Lamb appointed as
the guardian. Lewis also states Loyd was released from the guardianship and a second
guardianship was sought because Loyd could not give consent for medical treatment. The
parties agree any guardianship ended prior to Loyd's December 1993 execution of her will. 

 Lewis also attached as summary judgment evidence certain excerpts from Lamb's
deposition. Lamb testified to the following: she and Ms. Loyd were friends, and Loyd loved
Lamb; Lamb never visited Loyd in Loyd's home; Loyd came by Lamb's office to visit; Loyd
executed four or five wills from 1989 through 1993, and two of the wills "named Lamb";
Lamb said she never discussed the December 1993 will with Loyd and was never present in
attorney Atkins's office; Lamb and Loyd never discussed Loyd's relationship with Lewis;
Lamb prepared Loyd's income tax returns from 1991 until Loyd's death and also prepared
Loyd's final accounting. The one oddity that Lamb associated with Loyd related to Loyd's 
fondness for her dogs -- the dogs had "full run of everything" and ruined her car.

 A testator has testamentary capacity when she has sufficient mental ability to
understand she is making a will, the effect of making a will, the general nature and extent of
her property, the persons to whom she meant to devise and bequeath her property, the persons
dependent upon her bounty, and the mode of distribution among them. Schindler v.
Schindler, 119 S.W.3d 923, 931 (Tex. App.--Dallas 2003, pet. denied) (citing Chambers v.
Chambers, 542 S.W.2d 901, 906 (Tex. Civ. App.--Dallas 1976, no writ)). In addition, the
testator must have memory sufficient to collect in her mind the elements of the business to
be transacted and hold them long enough to form a reasonable judgment. Id.

 In deciding testamentary capacity, the proper inquiry is the condition of the testator's
mind on the day she executed the will. Id. at 931 (citing Lee v. Lee, 424 S.W.2d 609, 611
(Tex. 1968)). To successfully challenge a testator's mental capacity with circumstantial
evidence from time periods other than the day on which she executed the will, the contestant
must show (a) the evidence offered indicates a lack of testamentary capacity; (b) the evidence
is probative of the testator's capacity (or lack thereof) on the day the will was executed; and
(c) the evidence provided is of a satisfactory and convincing character. In re Estate of
Graham, 69 S.W.3d 598, 606 (Tex. App.--Corpus Christi 2001, no pet.). A court must not
set aside the probate on the basis of evidence that creates only a suspicion of mental
incapacity. In re Estate of Flores, 76 S.W.3d at 630. Evidence of incompetency at times
other than the date of execution of the will has probative force only if the evidence
demonstrates that the condition persists and has some probability of being the same condition
that existed at the "time of the making of the will." Schindler, 119 S.W.3d at 931. 

 The evidence in Lewis's affidavit -- Loyd's 1991 fall and head injury, her
hospitalization, her residence in care facilities, her prior wills, her friendships, Lewis's prior
work for Mr. Harry and Ms. Loyd, Lamb's appointment as Loyd's guardian, Lamb's tax
work for Loyd, and Lamb's alleged statement to Loyd that Lewis was trying to get her money
-- is not more than a scintilla of evidence sufficient to raise a genuine fact issue on the
elements of testamentary capacity at the time of the execution of her December 1993 will. 
Further, Lewis's statements in his affidavit -- that Loyd never regained testamentary capacity
and was unable to appreciate the bounty of her estate after the 1991 fall -- are conclusory
statements and not probative of testamentary capacity. See Ryland Group, Inc. v. Hood, 924
S.W.2d 120, 122 (Tex. 1996). As with Lewis's affidavit, the deposition excerpts contain no
evidence, circumstantial or otherwise, of Loyd's mental capacity on the day she executed the
will, and do not provide any circumstantial evidence from other time periods that is probative
of Loyd's mental incapacity on the day of the will execution. 

 To be a will, a document must be executed with testamentary intent. Hinson v.
Hinson, 154 Tex. 561, 280 S.W.2d 731, 733 (1955). The testator must have intended that
the very document at issue be the instrument that actually makes the disposition of the
testator's estate. In re Estate of Graham, 69 S.W.3d at 608. Intent is determined by the
language used in the will -- what the words that the testator has used actually express. In re
Estate of Steed, 152 S.W.3d 797, 813 (Tex. App.-- Texarkana 2004, pet. denied) (citing
Ayala v. Martinez, 883 S.W.2d 270, 272 (Tex. App.--Corpus Christi 1994, writ denied)). The
record contains Ms. Loyd's will. The language is not ambiguous. The will declares it is
meant to function as a will and that Loyd was of "sound and disposing mind and memory."
Clearly expressing Loyd's intention as to the disposition of her estate, the will's language
leaves no doubt the document was intended to be Loyd's will. Lewis produced no evidence
of any unusual or extraordinary circumstances at the time the will was executed that would
raise a fact question as to Loyd's lack of intent to make this document her will. Lewis's
evidence on lack of testamentary intent is so weak that it is mere surmise. 

 To set aside a will on grounds of undue influence, a contestant must establish (a) the
existence and exertion of an influence (b) that subverted or overpowered the testator's mind 
at the instrument's execution (c) so that the testator executed an instrument she would not
otherwise have executed but for such influence. In re Estate of Steed, 152 S.W.3d at 807
(citing Rothermel v. Duncan, 369 S.W.2d 917, 922 (Tex. 1963)). Age and its maladies, by
themselves, do not raise a fact issue that the testator's mind was in fact subverted or
overpowered at the time of the instrument's execution. Cotten v. Cotten, 169 S.W.3d 824,
827 ( Tex. App.--Dallas 2005, pet. denied). 

 The evidence of the friendship and business relationship between Lamb and Loyd
reveals Lamb had the opportunity to exert undue influence on Loyd, but the exertion of
undue influence cannot be inferred by opportunity alone. See In re Estate of Butts, 102
S.W.3d 801, 803, 805 (Tex. App.--Beaumont 2003, pet. denied). The evidence, whether
direct or circumstantial, must show that improper influence was exerted at the time the will
was made. Id. at 803. Lewis states in his affidavit that Loyd relied on Lamb to make all her
decisions and to handle all her affairs, and these "were not the free will of Lillian Loyd." He
also states, "From that day forward, Lillian Loyd was under the influence and control of
Susan Lamb." Lewis further asserts he knew there was undue influence because of his
knowledge of Loyd from the years before her fall. However, he does not explain the factual
bases for these assertions. Without any specific facts on the nature of the undue influence
and the manner and method in which it was exercised, these declarations are conclusory
statements that do not raise fact issues on undue influence. See generally Ryland Group, 924
S.W.2d at 122 (conclusory affidavits); see Estate of Davis v. Cook, 9 S.W.3d 288, 294 (Tex.
App.--San Antonio 1999, no pet.) (failure to offer specific facts of how beneficiary unduly
influenced testator). 

 Lewis also appears to argue the trial court cannot grant summary judgment when one
of the challenged elements is intent. Intent, he says, is for the trier of fact to decide. Though
intent generally may be a question for the trier-of-fact, Rules 166a and 166a(i) of the Texas
Rules of Civil Procedure do not preclude a trial court from granting a motion for summary
judgment on a cause of action that has intent as an element. See Tex. R. Civ. P. 166a,
166a(i); In re Estate of Grimm, 180 S.W.3d 602, 607-08 (Tex. App.--Eastland 2005, no pet.)
(summary judgment on undue influence) ; In re Estate of Butts, 102 S.W.3d at 804 (summary
judgment on undue influence); In re Estate of Graham, 69 S.W.3d at 608, 610-11 (summary
judgment on testamentary intent and undue influence). We overrule issues one and three.

 In issue two, Lewis contends a trial court may not grant the movant's summary
judgment motion when the testator has been under a guardianship that is concluded the day
before the execution of the will. Lewis relies on a document attached to his brief that was
not presented to the trial court. Under Rule 166a(c), the trial court considers the evidence
"on file at the time of the hearing, or filed thereafter and before judgment with the permission
of the court[.]" Tex. R. Civ. P. 166a(c); see Guinn v. Bosque County, 58 S.W.3d 194, 199
(Tex. App.--Waco 2001, pet. denied). We cannot consider evidence that was not presented
to the trial court for the summary judgment ruling. Moreover, the document on which Lewis
relies does not pertain to his claim in issue two. We overrule issue two.

 In issue four, Lewis objects to the affidavit of attorney Robert Atkins. Lewis asserts
Lamb relies on Atkins's affidavit to prove facts not within Atkins's personal knowledge. 
Lamb attached Atkins's affidavit to her no-evidence motion for summary judgment. The
evidence Lamb attached to her no-evidence summary judgment motion does not raise a fact
issue supporting any of Lewis's causes of action. Furthermore, Lewis did not complain to
the trial court about the lack-of-personal-knowledge ground. See Tex. R. Civ. P. 166a(f);
Tex. R. App. P. 33.1(a); Grand Prairie Indep. Sch. Dist. v. Vaughan, 792 S.W.2d 944, 945
(Tex. 1990); but see Dailey v. Albertson's, Inc., 83 S.W.3d 222, 226 (Tex. App.-- El Paso
2002, no pet.). 

 Lewis asserts that because his own affidavit presents facts contradicting Atkins's
affidavit, there is a fact issue on undue influence. However, Lewis's summary judgment
evidence does not present facts raising more than a scintilla of evidence on any of the
challenged elements. Further, he relies on evidence that was not presented to the trial court. 
We overrule issue four.

 In his last issue, Lewis argues a trial court may not grant summary judgment based on
the affidavit of the trial judge's relative. Lewis states Atkins is the trial judge's uncle, but
Lewis made no objection concerning that relationship to the trial court nor did he file a
recusal motion. We overrule issue five. The judgment is affirmed. 

 AFFIRMED.

 ____________________________

 DAVID GAULTNEY

 Justice


Submitted on April 12, 2007

Opinion Delivered July 12, 2007 


Before Gaultney, Kreger, and Horton, JJ.