**Concurring and Dissenting Opinion issued August 29, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00100-CV

————————————

## MARIA ANTONIA PULIDO, Appellant

## V.

## EVANGELINA ESTHER GUTIERREZ GONZALEZ, Appellee

On Appeal from the 129th District Court
Harris County, Texas
Trial Court Case No. 2008-63772

## CONCURRING AND DISSENTING OPINION

I respectfully dissent. This is a classic case of an appellate panel's failing to see the woods for the trees and, thereby, falling into error. Appellant, Maria Antonia Pulido, appeals the trial court's grant of summary judgment in favor of appellee, Evangelina Esther Gutierrez Gonzalez, in Pulido's suit to set aside the

warranty deed conveying Pulido's homestead to Gonzalez, her caregiver. The majority affirms the no-evidence and traditional summary judgment on undue influence and fraudulent procurement of a deed. It also reverses the trial court's grant of summary judgment and remands with respect to Pulido's allegation of forgery of the deed by Gonzalez and Gonzalez's counterclaim to quiet title and cancel lis pendens.

The majority ignores or deems irrelevant all summary judgment evidence produced by Pulido, the non-movant, on undue influence and fraudulent procurement of a deed and affirms the no-evidence summary judgment on these claims, contradicting of the standard of review of no-evidence summary judgment. It then hammers the nail into the coffin of Pulido's undue influence claim by, in addition, affirming traditional summary judgment as to that claim—again ignoring the fact that Pulido has raised a material fact issue on every element of undue influence. The majority then, inconsistently, reverses the no-evidence summary judgment finding the deed not forged as a matter of law, and it remands for trial the single issue of whether the signature on the deed was a forgery—after declaring all evidence that would show the inextricably intertwined circumstances under which the deed was signed irrelevant. This holding is contradictory to the majority's declaration that, as a matter of law, the deed was not procured by fraud. If the deed in favor of Gonzalez was forged, it was necessarily procured by fraud. The

2

majority's opinion thus produces an un-triable case and denies the non-movant her day in court on a fact-intensive claim. The only possible outcome of the case on remand is that Pulido will be required to prove that the signature on the deed is not hers. But, even if she can prove that, after this court has declared that all circumstantial evidence of forgery and all motive for the forgery of the deed are immaterial as a matter of law, she will not be entitled to prove that the deed was procured by fraud because this court has declared that, as a matter of law, it was not.

I would reverse the summary judgment in its entirety and remand for trial on the ground that this case presents numerous material fact issues, including fact issues with respect to Gonzalez's exercise of undue influence over Pulido and fraudulent procurement of the deed.

**Background**

Pulido and Gonzalez were long-time friends from church. When Pulido needed assistance with daily errands and activities, Gonzalez would offer to help her. Following her discharge from a hospital stay in mid-2007, Pulido needed more assistance with daily living. Gonzalez offered to take Pulido into her home. Pulido was eighty-three years old and in poor health when she left her own home for Gonzalez's. During the year Pulido remained in Gonzalez's home, Pulido testified that she was prevented from returning to her home. She did not take a

3

bath, did not brush her hair, ate just one meal a day, and lost weight. She was weak and sick while at Gonzalez's home, and she testified that she could not eat because of the mistreatment. Pulido further testified that Gonzalez took all of her government checks and that she was not allowed to use the phone unless she paid for it, so she was unable to contact anyone.

On September 2, 2007, shortly after Pulido was taken into Gonzalez's home, a notarized warranty deed conveying Pulido's homestead to Gonzalez, was signed. The deed was recorded in the Harris County Real Property Records the following month. Gonzalez claimed Pulido signed the deed in the presence of a notary. Pulido denied Gonzalez's contentions and testified by deposition that Gonzalez forged her signature. Pulido also argued, in the alternative, that, if she did sign the deed, she only did so because Gonzalez misrepresented the purpose of the document and tricked her into signing it. Pulido also testified by deposition that she had no intention of conveying her home to Gonzalez, and she denied that she wanted to give her house to Gonzalez in return for Gonzalez's taking care of her.

In October 2008, one year after the deed was executed conveying Pulido's homestead to Gonzalez, Pulido filed suit against Gonzalez to set aside the warranty deed on the basis of undue influence, fraud/misrepresentation, and forgery. Pulido also filed a notice of lis pendens on the property. Gonzalez answered and filed a counterclaim to quiet title to the property, asking the court to cancel the notice of

4

lis pendens, declare the lis pendens invalid and unenforceable, and declare Gonzalez the true owner of the property in fee simple. In addition, Gonzalez produced a "Notice of Claim of Lien," predicated on a loan of $10,000 from Gonzalez and Aurelia G. Leon to Pulido. Pulido testified that she knew what a lien was and that she received no loan from Gonzalez or Leon. Rather, the lien was a forgery.

Gonzalez filed a hybrid motion for summary judgment on both traditional and no-evidence grounds. TEX. R. CIV. P. 166a(c) (traditional), 166a(i) (no-evidence). Gonzalez argued that she was entitled to no-evidence summary judgment with respect to Pulido's undue influence, fraud/misrepresentation, and forgery claims and traditional summary judgment with respect to Pulido's undue influence claim. Gonzalez also moved for traditional summary judgment on her counterclaim to quiet title. She did not, however, move for summary judgment on the $10,000 loan.

The trial court granted Gonzalez's motion in its entirety and signed a final judgment (1) ordering that Pulido take nothing on her claims against Gonzalez, (2) canceling the notice of lis pendens Pulido filed, (3) declaring Gonzalez the fee simple owner of the property, and (4) awarding Gonzalez court costs. I would reverse the summary judgment and remand the case for trial on all claims.

5

## Undue Influence

The trial court granted Gonzalez no-evidence and traditional summary judgment on Pulido's claim of undue influence. The majority affirms the summary judgment on this issue. I would reverse it.

As the majority states, undue influence requires: (1) the existence and exertion of influence, (2) the effective operation of the influence so as to subvert or overpower the mind of the maker of the document at the time of its execution, and (3) the execution of the document which the maker would not have executed but for the exercise of such influence. *See Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex. 1963). Undue influence is applicable to a deed as well as to a will. *Quiroga v. Mannelli*, No. 01-09-00315-CV, 2011 WL 944399, at *4 (Tex. App.—Houston [1st Dist.] Mar. 17, 2011, no pet.) (mem. op.) ("In Texas, the rules guiding determination of the existence of under influence apply substantially alike to wills, deeds, and other instruments.") (citing *Wils v. Robinson*, 934 S.W.2d 774, 780 (Tex. App.—Houston [14th Dist.] 1996), *writ granted, judgm't vacated w.r.m.*, 938 S.W.2d 717 (Tex. 1997)). It may be proved by circumstantial as well as direct evidence. *Rothermel*, 369 S.W.2d at 922. Whether the grantee under the deed exerted undue influence on the grantor is an ultimate question of fact for the fact finder. *Green v. Earnest*, 840 S.W.2d 119, 123 (Tex. App.—El Paso 1992, writ denied).

It is well established that "every case of undue influence must be decided on its own peculiar facts." *Pearce v. Cross*, 414 S.W.2d 457, 462 (Tex. 1966) (citing *Rothermel*, 369 S.W.2d at 923). In determining whether undue influence was in fact exercised, the court assesses the opportunities existing to exert the influence, the circumstances surrounding the execution of the document, the existence of any fraudulent motive, and whether the person executing the document was habitually subjected to the control of the party accused. *Estate of Davis*, 920 S.W.2d 463, 466 (Tex. App.—Amarillo 1996, writ denied).

In determining whether undue influence was exercised, courts consider, as the majority states:

• the circumstances surrounding the drafting and execution of the instrument;

• the relationship between the grantor and the grantee;

• the motive, character, and conduct of the persons benefitted by the instrument;

• the participation by the beneficiary in the preparation or execution of the instrument;

• the words and acts of the parties;

• the interest in and opportunity for the exercise of undue influence;

• the physical and mental condition of the grantor at the time of the instrument's execution, including the extent to which she was dependent upon and subject to the control of the grantee; and

- the improvidence of the transaction by reason of unjust, unreasonable, or unnatural disposition of the property.

*Guthrie v. Suiter*, 934 S.W.2d 820, 831 (Tex. App.—Houston [1st Dist.] 1996, no writ); *see In re Estate of Graham*, 69 S.W.3d 598, 609–10 (Tex. App.—Corpus Christi 2001, no pet.). Furthermore, the supreme court has stated:

> In the absence of direct evidence all of the circumstances shown or established by the evidence should be considered; and even though none of the circumstances standing alone would be sufficient to show the elements of undue influence, if when considered together they produce a reasonable belief that an undue influence was exerted that subverted or overpowered the mind of the [person] and resulted in the execution of the [document] in controversy, the evidence is sufficient to sustain such conclusion.

*Rothermel*, 369 S.W.2d at 922.

The majority also correctly states the standard of review of no-evidence summary judgment. Specifically, a proper no-evidence summary judgment must be affirmed when the record shows one of the following: (1) there is no evidence on the challenged element; (2) the evidence offered to prove the challenged element is no more than a scintilla; (3) the evidence establishes the opposite of the challenged element; or (4) the court is barred by law or the rules of evidence from considering the only evidence offered to prove the challenged element. *See* TEX. R. CIV. P. 166a(i); *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *King Ranch, Inc. v.*

8

*Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable more reasonable and fair-minded people to differ in their conclusions." *Id.* (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

The majority likewise correctly states the standard of review for traditional summary judgment. To prevail on a traditional summary-judgment motion, asserted under Rule 166a(c), a movantmust prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c). A defendant moving for traditional summary judgment must either (1) disprove at least one element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiff's cause. *See IHS Cedars Treatment Ctr., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller*, 168 S.W.3d at 816. In reviewing a motion for traditional summary judgment, the appellate courts take the non-movant's competent evidence as true, indulge every reasonable inference in favor of the non-movant, and resolve all doubts in favor of the non-movant. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005).

Here, Pulido has clearly produced more than a scintilla of evidence on *each* of the factors that go to the proof of undue influence. *See Guthrie*, 934 S.W.2d at 831. Thus the majority's affirming Gonzalez's no-evidence summary judgment is clearly erroneous. Nor does the majority credit *any* of the evidence produced by Pulido as raising a material fact issue on undue influence; even though Pulido's evidence goes to the factors used to prove undue influence, and it is well established that proof of undue influence is peculiarly fact-intensive; and even though the supreme court has expressly stated that "[i]n the absence of direct evidence all of the circumstances shown or established by the evidence should be considered" in proving undue influence. *See Rothermel*, 369 S.W.2d at 922. Rather, the majority simply states, conclusorily, that the evidence produced by Pulido on each of the factors used to prove undue influence "raises, at most, a fact issue as to whether Gonzalez had an *opportunity* to exert influence over Pulido." Slip Op. at 7–8 (emphasis in majority opinion).

The majority thus completely discounts as "no proof" of undue influence evidence of (1) the circumstances surrounding the drafting and execution of the deed of Pulido's homestead to Gonzalez; (2) the relationship between Pulido, the grantor, and Gonzalez, the grantee; (3) the motive, character, and conduct of Gonzalez, who benefitted by the instrument; (4) Gonzalez's participation in the preparation or execution of the instrument; (5) the words and acts of the parties;

10

(6) the interest in and opportunity for the exercise of undue influence by Gonzalez; (7) Pulido's physical and mental condition at the time of the instrument's execution, including the extent to which she was dependent upon and subject to Gonzalez's control; and (6) the improvidence of the deeding of Pulido's homestead to a woman she met at church and who, as shown by more than a scintilla of evidence, was keeping Pulido captive and isolated at the time of executive of the deed of her homestead over to her. causing an unjust, unreasonable, or unnatural disposition of the property. *See Guthrie*, 934 S.W.2d at 831. The majority's conclusion that Pulido produced no evidence of undue influence—or what legally constitutes no evidence—is simply contradictory to the standard of review of both summary judgment and undue influence under established law. On the type of review employed by the majority, proof of undue influence is impossible.

Considering the summary judgment evidence in the light most favorable to Pulido, the non-movant, as we must, I conclude that the summary judgment evidence is more than sufficient to raise a material fact issue as to Gonzalez's exercise of undue influence over Pulido. The evidence shows that the relationship between Pulido and Gonzalez was one between an elderly patient left alone and unable to care for herself after her discharge from the hospital, on the one hand, and a church friend and voluntary caregiver on the other. At the time Pulido purportedly signed the warranty deed conveying her homestead to Gonzalez, she

11

was elderly, in poor health, and had been living with Gonzalez in Gonzalez's house since her discharge from the hospital. Pulido testified that Gonzalez mistreated her during the year she was in her care and kept her secluded and isolated in Gonzalez's own house. Gonzalez took Pulido's government checks and charged her to use the telephone so that she was unable to contact anyone. Not long after Pulido moved into Gonzalez's house, Pulido purportedly executed the deed to her homestead over to Gonzalez before a notary. Yet there is no evidence that the person who appeared before the notary and signed the deed was actually Pulido and not Gonzalez. Nor is there any evidence from the notary or from any other witness to the transaction regarding the circumstances under which the deed was actually drafted and signed other than Pulido's testimony that Gonzalez was "tricky" and that, if she signed the deed, she did not know what she was signing. Finally, it is at least arguably unreasonable and unnatural for an elderly woman, living alone and in need of assistance after release from the hospital, not only to move into a voluntary caregiver's house, but to live there in isolation for a year and to turn over her government checks to the caregiver, leaving herself without money even to pay to make telephone calls. It is even more unreasonable and unnatural for an elderly woman in these circumstances to deed over her homestead to that caregiver without contacting, consulting, or conferring with anyone else.

I conclude that the summary judgment evidence of the circumstances surrounding the transaction provide substantially more than a scintilla of proof to sustain a reasonable belief that Gonzalez exerted an undue influence over Pulido that subverted or overpowered Pulido's mind and resulted in the execution of the deed of Pulido's homestead to Gonzalez, which would not have been executed but for the exercise of such influence. *See Rothermel*, 369 S.W.2d at 922. I would, therefore, sustain Pulido's first issue.

I would reverse the summary judgment in favor of Gonzalez on Pulido's undue influence claim and remand this issue for trial on its facts. *See* TEX. R. CIV. P. 166a(c) (stating that traditional summary judgment may be granted when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law"); TEX. R. CIV. P. 166a(i) (no-evidence summary judgment may be granted when "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial"); *Green*, 840 S.W.2d at 123 (whether grantee under deed exerted undue influence on grantor is ultimate question of fact for fact finder).

**Fraud/Misrepresentation**

The trial court also granted Gonzalez's no-evidence motion for summary judgment on Pulido's claim that Gonzales procured the deed to her homestead by

13

fraud. The majority affirms the summary judgment on this issue as well. Again, I would reverse.

In order to establish that the deed was procured as the result of a fraud perpetrated by Gonzalez, Pulido must establish that (1) Gonzalez made a material misrepresentation (2) that was false; (3) when the representation was made, Gonzalez knew it was false or made it recklessly without the knowledge of the truth and as a positive assertion; (4) Gonzalez made the representation with the intent that Pulido act upon it; (5) Pulido acted in reliance on the representation; and (6) Pulido thereby suffered injury. *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009).

Pulido testified that she never signed the deed evidencing the gift of her homestead to Gonzalez. She further testified that if she did sign it she did not know what it was and that Gonzales was "tricky." The deed was executed while Pulido was secluded in Gonzalez's home, and it was promptly filed in the Harris County Real Property Records. Pulido also testified that a "Notice of Lien" placed on her homestead, reflecting her liability on a $10,000 loan from Gonzalez and Aurelia G. Leon to her, was a forgery and that she received no loan from either woman.

If the deed was forged, the signature on the forged deed constitutes a fraudulent misrepresentation made to deprive Pulido of her homestead to her harm,

14

and it is one that succeeded in harming her. If it was not forged, but its nature was misrepresented to Pulido, that likewise is a material misrepresentation made to deprive Pulido of her homestead to her harm, and one that succeeded. *See Aquaplex*, 297 S.W.3d at 774. If either misrepresentation was, in fact, made by Gonzalez, it would follow that she knew it was false and that she made it with the intent that Pulido act on it and convey her home to Gonzales. It is an undisputed fact that the deed conveyed the home to Gonzalez, depriving Pulido of her property and, thereby, necessarily harming her unless the conveyance was voluntary—a point for which the only evidence is Gonzalez's testimony, which is disputed by Pulido, the non-movant. Either way, there is more than a scintilla of evidence to support Pulido's fraud claim, beginning with the evidence the majority itself credits as raising material fact issues as to forgery.

Taking Pulido's deposition testimony as true for purposes of summary judgment, as we must, I would hold that there is more than a scintilla of evidence of fraud by Gonzalez as well. *See Rubio*, 185 S.W.3d at 846 (observing that, in reviewing summary judgment, reviewing courts take non-movant's competent evidence as true, indulge every reasonable inference in favor of non-movant, and resolve all doubts in favor of non-movant).

15

I would sustain Pulido's second issue, as well as her first. I would reverse the summary judgment in favor of Gonzalez on Pulido's fraud/misrepresentation claim and remand the issue for trial before the finder of fact.

**Forgery**

Finally, I agree with the majority that Pulido presented more than a scintilla of evidence in support of her forgery allegation and that, therefore, Gonzalez cannot prevail on her counterclaim to quiet title and cancel notice of lis pendens at this stage in the litigation. The summary judgment entered in favor of Gonzalez on forgery and on her counterclaim must be reversed and remanded. I join the majority opinion on these issues. However, I emphasize that it makes no sense for this court simultaneously to declare that, as a matter of law, the deed to Pulido's homestead was not procured by fraud, i.e., that it was not procured by either a forged or a coerced signature, and that whether the deed was forged is a triable issue.

## Conclusion

I would reverse the trial court's judgment and remand the case for trial on all issues.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Justice Keyes, concurring and dissenting.